Henry **DEUTSCHER**, Petitioner,

v.

Harol **WHITLEY**, Warden of the Nevada State Prison; and Brian McKay, Attorney General of the State of Nevada, Respondents.

No. CV–N–86–445–ECR.

United States District Court,
D. Nevada.

June 25, 1987.

---

Greg Costello by David J. Burman, Stephen R. Illa and Perkins Coie, Seattle, Wash. and Thomas E. Perkins, Carson City, Nev., for petitioner.

Brian McKay, Atty. Gen. by Brian Hutchins, Carson City, Nev. and Robert J. Miller, Clark Co. Dist. Atty. by James Tufteland, Deputy, Las Vegas, Nev., for respondents.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

On May 11, 1987, the Court heard oral argument and received evidence regarding the cause and prejudice showing required to overcome the petitioner's procedural default in the state courts. By its order of April 1, 1987, the Court held that nine counts in the petition were potentially barred by virtue of procedural default, and ordered that a hearing be held to determine the existence of cause and prejudice.*

The procedural facts of this case were set forth fully in the Court's order of November 19, 1986, and will not be restated at length here. Suffice it to say for present purposes that the respondents have argued that nine of the claims in the present petition are procedurally barred by virtue of the petitioner's failure to raise them in his direct appeal to the state supreme court or in the first state post-conviction relief proceeding. As stated in the Court's April order, the state supreme court refused to consider these claims on precisely that basis. The petitioner argues, on the other hand, that cause and prejudice exist to excuse that default, as his appellate counsel at the time, Public Defender Ahlswede, was ineffective in failing to raise these issues at the proper time. On this basis, the petitioner contends that the Court should excuse the procedural default, and should reach the merits of these claims.

## DISCUSSION

■ As an initial matter, ineffective assistance of appellate counsel can constitute cause for purposes of *Wainwright. Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). The petitioner must show that his appellate counsel was deficient under the two part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in order to demonstrate that cause

---

* The counts in the petition subject to procedural default were found to be 1, 2, 3, 5, 6, 7, 8, 9, and 10. There was confusion as to why Count 1 was included in the order, as the state supreme court did reach the merits of the ineffective assistance of trial counsel claim in the second state post-conviction relief proceeding. As noted in the April order, where the state supreme court reaches the merits of a claim, the state's reliance on procedural default in the federal habeas proceedings is precluded. April order, slip op. at 4. Because the state supreme court reached the merits of the ineffective assistance of trial counsel, this portion of Count 1 is not subject to procedural default.

The remainder of Count 1 contains the allegations regarding ineffective assistance of appellate counsel. These claims were included in the petition by present counsel, apparently, to anticipate and rebut the impending claim of procedural default by respondent's counsel. In view of the fact that petitioner attempts to establish cause and prejudice by pointing to his former appellate counsel's ineffectiveness this portion of the claim was at issue at the May hearing.

exists to excuse his procedural default. Thus, the petitioner must show that his counsel made errors so serious that he was not rendering the petitioner reasonably effective assistance. *Id.,* at 687, 104 S.Ct. at 2064. Further, the petitioner must also show that counsel's failure to render reasonably effective assistance resulted in prejudice to the petitioner's case. *Id.,* at 694, 104 S.Ct. at 2068. The petitioner must demonstrate under this plank that the attorney error resulted in a reasonable probability that the outcome of the proceeding would have been different had the error not occurred. *Id.* Once the two part test of *Strickland* is established, cause is made out, and the Court must then turn to the analysis of prejudice under *Wainwright.*

■ Under this test, which is similar to the prejudice test in *Strickland,* the Court must determine whether the claim which would otherwise be excluded by the procedural default has a reasonable probability of affecting the outcome of the petitioner's case. This analysis does not focus on the petitioner's ability to prove the facts necessary to prove the claim. It focuses instead on the legal issue involved. If that particular claim could reasonably free the petitioner of the restraints imposed upon him by his conviction, then prejudice is demonstrated. Thus, it is clear that the various claims must be measured against currently prevailing legal standards in determining whether the prejudice is present, for only the currently prevailing law can set the petitioner free. What the law was at the time these claims should have been raised by petitioner's counsel is therefore irrelevant. Under the above test, it appears that only one of the claims at issue should be heard on the merits, as cause and prejudice exist to excuse procedural default in the state courts for only that claim.

■ As an initial matter, the petitioner's evidence consisted mostly of testimony of his expert, Timothy Ford. Mr. Ford is a licensed attorney in the state of Washington, and practices primarily in death penalty cases. In Mr. Ford's opinion, at the time of the petitioner's sentencing in this case, counsel would have necessarily been inef-

fective if he had tried to put on a penalty phase defense without first contacting other counsel. This was the era immediately following *Furman,* and Ford's opinion was that very few attorneys in the country had ever put on a penalty phase defense. Therefore, he concluded, no attorney should have tried to "go it alone," as the nature of the penalty phase defense was so unusual and foreign that most attorneys had no facility for it at that time. By attempting to put on the petitioner's penalty phase defense himself without seeking outside help from an experienced attorney, Ford contends that Ahlswede's representation of the petitioner was *per se* deficient.

The Court is unwilling to accept the proposition that counsel is automatically ineffective for failure to associate outside counsel for the penalty phase. If this were true, no lawyer would be competent to represent a defendant in the time period following a new Supreme Court decision that breaks with precedent. It seems that any attorney should be able to read the existing cases, and to determine what types of evidence and argument should be put forth at a penalty phase hearing without having to bring in outside help. Failure to prepare adequately for the penalty phase would constitute ineffective assistance. Simply failing to associate outside counsel, in and of itself, does not equate to a *Strickland* violation.

Ahlswede's failure to contact other counsel, therefore, does not automatically establish ineffective assistance of counsel. The possibility remains, however, that the manner in which he did conduct the petitioner's penalty phase defense violated *Strickland.* In this regard, the petitioner claims that Ahlswede's failure to consider or investigate the remaining claims violated his obligation to render reasonably effective assistance of counsel.

## COUNT ONE

As stated above, this particular claim is not itself the subject of procedural default, as the state supreme court did reach the merits of the substantive ineffective assistance of counsel claim. The remainder of Count One, namely, the ineffective assist-

ance of appellate counsel claim, will be discussed as it affects each individual claim.

COUNTS TWO, THREE, FIVE, & SIX

 It appears to the Court that all of these counts must fall victim to the procedural default in the state courts, in that the petitioner has failed to show that appellate counsel was ineffective for failing to raise them on the first direct appeal to the state supreme court, or in the first state post-conviction relief procedure. Count Two, for example, deals with the intent necessary for the imposition of the death penalty. Specifically, the petitioner argues that no such penalty may be inflicted in the absence of a direct finding by the jury of the intent to kill. In cases such as this, where the death sentence has been imposed on a finding of felony murder, and where no direct finding of the intent to kill has been made, the petitioner argues that the death penalty is improper.

Appellate counsel, Mr. Ahlswede, did not raise this claim at any time before the Nevada courts. Mr. Ford testified at the evidentiary hearing that the law regarding the intent requirement was in a developing stage at the time of Ahlswede's representation, but that the "tools" were present in the cases from which one could have fashioned such an argument. Specifically, Ford stated that Justice White's concurrence in *Lockett v. Ohio,* 438 U.S. 586, 624, 98 S.Ct. 2954, 2983, 57 L.Ed.2d 973 (1978), indicated that intent to kill might be constitutionally required. In addition, Ford testified that various state supreme court cases at that time held that the death penalty could not be imposed for rape or against the "non-trigger man" on a felony murder conviction. *See Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). From these antecedents, Mr. Ford argued that he would have advised raising the intent issue in any felony murder case after 1978, and that Mr. Ahlswede's representation was thus ineffective for failure to do so.

Similarly, Mr. Ford contended that Ahlswede erred in failing to raise in the state proceedings the contentions currently contained in Count Three. In this count, the petitioner contends that the prosecutor improperly argued during the sentencing phase that intoxication was not to be considered as a mitigating circumstance. Ford stated during the evidentiary hearing that at the time of the sentencing in this case, there were a number of California state cases from lower and intermediate courts which rejected this type of prosecutorial argument. Ford conceded that it was not until the early 1980s that this type of improper argument was raised as a federal constitutional issue. Nonetheless, Ford felt that the "tools" for the argument were present, and that Ahlswede was ineffective for failing to raise this claim.

In addition, Ford testified that Ahlswede was ineffective for failing to contest the constitutionality of redundant aggravating circumstances. This argument, which is contained in Count Five of this petition, was in its early stages at the time of the petitioner's conviction. It was first raised, apparently, in *Provence v. Florida,* 337 So.2d 783 (Fla.1976), *cert. denied,* 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977), and in *State v. Cherry,* 298 N.C. 86, 257 S.E.2d 551 (1979), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980). It is not clear from the testimony presented at the hearing when, if ever, this argument gained recognition in the federal courts. On the basis of the two state supreme court cases, however, Mr. Ford still contends that counsel should have been aware of the argument at the time of the appeal in this case, and that failure to raise the point constituted the ineffective assistance of counsel.

Ford also testified at the hearing that Mr. Ahlswede gave ineffective assistance of counsel when he failed to raise the arguments regarding the burden of proof contained in Count Six. Once again, Mr. Ford indicated that no case had specifically held that the burden of proof in capital sentencing had to be beyond a reasonable doubt at the time of the petitioner's first appeals. Instead, Ford testified that the "tools" with which to make such an argument were in existence at the time. Relying on *Lockett, supra,* pg. 797, and *In re Winship,* 397

U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), Mr. Ford argued that anyone could have developed this argument during the relevant time frame. As far as the actual authorities went at that time, however, Ford did indicate that the cases were in a developing stage, and that no court had specifically held on this matter until *State v. Wood*, 648 P.2d 71 (Utah 1981), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). Based on the existing precedent at the time of the first appeals, Ford still testified that Ahlswede's assistance was ineffective for failing to raise this claim.

It is difficult to see how Mr. Ahlswede's failure to raise these claims constitutes ineffective assistance of counsel. It has long been held that counsel does not have a duty to raise every possibly conceivable claim. In *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), for example, the Court indicated that a deliberate choice by counsel not to press a certain colorable constitutional claim regarding prosecutorial misconduct did not constitute ineffective assistance of counsel, where counsel had researched a number of claims and had decided that the prosecutorial claim was not worth pursuing. *Id.*, 106 S.Ct. at 2667. In addition, the Court also noted that even "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.*, (*citing Murray v. Carrier*, 106 S.Ct. 2639, at 2641 (1986) *and Engle v. Issac*, 456 U.S. 107, 133–34, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982)). Therefore, where counsel has vigorously pursued claims which he feels have merit, but has left out other colorable claims, either deliberately or because of failure to recognize the legal basis for the claim, no ineffective assistance of counsel claim will lie. *See also Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.), *aff'd on rehearing*, 731 F.2d 1486 (1984), *cert. denied*, 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984) (counsel's failure to advance errors on appeal later gaining judicial recognition does not constitute ineffective assistance of counsel); *Sul-*

*livan v. Wainwright*, 695 F.2d 1306, 1309 (11th Cir.), *cert. denied*, 464 U.S. 922, 104 S.Ct. 290, 78 L.Ed.2d 266 (1983); *Songer v. Wainwright*, 571 F.Supp. 1384, 1403 (M.D. Fla.1983).

In this case, Mr. Ahlswede testified that he raised all claims which he felt were worthy and had merit. He freely admitted that the contentions contained in Count Two, Three, Five, and Six of the current petition simply never occurred to him. Whereas the petitioner claims that this failure constituted ineffective assistance, it appears that Ahlswede's assistance was not ineffective.

First, and foremost, all of these claims were in their early stages of development as constitutional issues when the petitioner's first appeals began. As such, it is not surprising that Mr. Ahlswede did not recognize the legal basis for the arguments, inasmuch as they simply did not exist as matters of federal constitutional law. Ahlswede's representation cannot be said to be constitutionally defective for failure to invent the claims himself. *Alvord, supra*, pg. 798. In addition, the fact that some of these claims later gained judicial recognition is not relevant. As noted in *Alvord*, the later recognition of an argument does not cast aspersions onto the failure of counsel to envision the future. Thus, it does not appear that Ahlswede rendered ineffective assistance of counsel when he failed to recognize these four claims. As the Court stated in *Murray, supra*, pg. 798, the mere failure to recognize the legal basis for a claim does not constitute ineffective assistance of counsel. In this case, Ahlswede failed to recognize the legal basis for claims that were only just then beginning to coalesce out of the cases. If the failure to recognize established claims will not always constitute ineffective assistance, *see Murray, supra*, then the failure to recognize claims which are still in their embryonic state must not be constitutionally suspect. These four claims must therefore be barred by procedural default, as there is not cause and prejudice to avoid the consequences of *Wainwright.*

## COUNT SEVEN

■ This claim urges that the sentence of death was improperly imposed against the petitioner, in view of the fact that the penalty is discriminatorily enforced against poor defendants, male defendants, and defendants accused of killing white women. It appears that no cause and prejudice exists to excuse the procedural default for this claim either.

As the Supreme Court has recently noted, claims of racial bias in the enforcement of the death penalty cannot be the basis for overturning such a sentence. *McCleskey v. Kemp*, ── U.S. ──, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987). The Court also noted that membership in other minority groups and gender identification were both irrelevant in determining whether the sentence of death had been properly imposed. *Id.* Thus, the fact that the petitioner is a poor white male, convicted of murdering a white female is simply not relevant to the constitutionality of his death sentence, according to the *McCleskey* case. Therefore, even if the petitioner had presented this claim in a timely manner, it would fail to secure him relief from his conviction and sentence. In that this claim cannot afford him relief, there is no prejudice for either the *Strickland* or *Wainwright* test, and it will not be considered further in this petition.

## COUNT EIGHT

It does appear, however, that cause and prejudice have been met for Count Eight. In this claim, the petitioner argues that jurors were impermissibly excluded from the jury because of their reservations about the death penalty. Petitioner does not contend that no juror can never be excluded for such reservations. Rather, he argues that these particular jurors were not asked the proper questions on *voir dire* as required by *Witherspoon v. Illinois*, 391 U.S. 510, 520, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968).

■ It appears, as an initial matter, that the *Strickland* test is met for this count. The *Witherspoon* case was well entrenched within the annals of capital sentencing jurisprudence by the time of the petitioner's

conviction, having been decided ten years earlier. It thus appears to the Court that any competent counsel should have at least considered this claim before winnowing it out. In this case, however, Mr. Ahlswede testified that he did not even think about the *Witherspoon* issue when writing the first appellate briefs. In view of the significance and popularity of this particular argument, it seems that any effective counsel would have at least considered the claim, and would probably have raised it.

■ In addition, counsel's failure to raise this claim appears to have prejudiced the petitioner, both for *Strickland* and *Wainwright* purposes. As noted above, "cause" focuses on the legal force of the argument, not on the petitioner's ability to plead facts to make out the argument. If the claim advanced would free the petitioner from the restraints of his conviction, then he has been prejudiced if the claim has not been advanced on his behalf. In this case, a *Witherspoon* claim would possibly free the petitioner of his impending sentence of death and would cause him to be re-sentenced. *Id.* Because a successful *Witherspoon* claim would so free him, prejudice exists for this claim.

## COUNT NINE

■ In this count, the petitioner contends that the state supreme court failed to conduct properly the proportionality review as is required by Nevada law. *See* NRS § 177.055. As an initial matter, it is clear that proportionality reviews, as such, are not required by the Constitution. *See McCleskey v. Kemp*, ── U.S. ──, 107 S.Ct. 1756, 1774, 95 L.Ed.2d 262 (1987); *Pulley v. Harris*, 465 U.S. 37, 43, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). Failure to conduct such a review thus cannot be in and of itself the basis for federal habeas corpus relief. *Id.* In addition, it is equally clear that federal habeas relief cannot lie for the state's failure to comply with its own procedures. *See* 28 U.S.C. § 2254(a). The state's failure to conform to its own requirements for proportionality reviews are thus also not subject to federal habeas review. Thus, the only possibly cognizable

claim in this count is that the state's proportionality review creates a liberty interest, and that the state's failure to conduct properly the review deprived him of that liberty interest without due process of law.

██ This claim must fail for the same reasons as Counts Two, Three, Five, and Six. The state's procedure for proportionality review may indeed create some sort of liberty interest, but the relevant question here is whether Mr. Ahlswede's counsel was ineffective for failing to recognize that fact at the time of the first appeals in this case. The petitioner has not presented the Court with any evidence which indicates that effective counsel would have recognized and raised this issue at that time. Indeed, the Court has been unable to find any case law from any jurisdiction which supports this theory. If this claim were properly before the Court, this theory would be given full consideration. It appears, however, that Mr. Ahlswede's representation was not constitutionally defective for failing to invent this claim seven years earlier. Count Nine will also not be considered further in this case.

COUNT TEN

In Count Ten of the petition, Deutscher argues that hearsay evidence and bad acts evidence was admitted at his penalty phase hearing in violation of his due process rights. Specifically, the petitioner argues that NRS § 200.033 allows the introduction of proof of a prior conviction, but that that statute does not allow any other type of evidence regarding the first conviction to be admitted. In this case, both the victim of the prior crime and a police officer who had worked on that case were allowed to testify about the offense. The petitioner argues that he was prejudiced because of this testimony.

██ As an initial matter, it is clear that the states can introduce hearsay and bad acts evidence in a penalty phase hearing and remain within the bounds of the Constitution. *Spencer v. Texas*, 385 U.S. 554, 560, 87 S.Ct. 648, 651, 17 L.Ed.2d 606 (1967); *see also Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983). Petitioner does not debate this point. Rather, he contends the *type* of evidence used (the testimony of the victim and the police officer as compared to a certified copy of conviction) resulted in a due process violation, and that Ahlswede was ineffective for not raising the claim on the first appeals.

██ It appears to the Court that Ahlswede's conduct regarding this claim does not constitute ineffective assistance of counsel. First, and foremost, the standards regarding due process violations and evidence were only in a rudimentary state of development at the time in question. The fact that this was not a common or well developed claim tends to support Ahlswede's effectiveness. Petitioner's citation to *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), is unavailing, in that this case holds merely that all facets of the penalty phase hearing must comport with due process. The case does not discuss admission of evidence in any respect. This particular claim, therefore, appears to have been fairly undeveloped at that time.

In addition, the standards which have evolved regarding evidence and due process indicate that the claim is extraordinarily difficult to prove. *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir.1986) (evidence must be so conspicuously prejudicial or of such a magnitude that it fatally infected the trial and deprived the defendant of fundamental fairness). Counsel in this case did file a variety of appellate and post-conviction briefs on the petitioner's behalf. In the course of preparing those petitions, he naturally weeded out the stronger claims from the weaker ones. That he failed to assert this claim, which would have been extremely difficult to prove, does not constitute ineffective assistance of counsel. There is thus no cause to excuse the petitioner's procedural default on Count Ten as well, and it will not be considered further in this matter.

IT IS, THEREFORE, HEREBY ORDERED that Counts Two, Three, Five, Six, Seven, Nine, and Ten shall be dismissed

from the current petition, as the petitioner has failed to demonstrate cause and prejudice to excuse his procedural default on these claims in state court.

IT IS FURTHER ORDERED that Count Eight shall remain part of this petition, in view of the fact that Mr. Ahlswede was ineffective for not raising the claim during the first appellate remedies.