**Charles R. GORDON, Petitioner,**

v.

**Harry K. SINGLETARY, Jr.,
et al., Respondents.**

**No. 94–339–CIV–T–17A.**

United States District Court,
M.D. Florida,
Tampa Division.

April 28, 1995.

Charles Ray Gordon, Polk City, FL, pro se.

William I. Munsey, Jr., Stephen Allan Baker, Atty. General's Office, Dept. of Legal Affairs, Tampa, FL, for respondents.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

### PROCEDURAL HISTORY

On May 4, 1983, Petitioner was arrested and charged with the robbery and first degree murder of an 85–year–old–woman, Sophie Biskup. On April 4, 1984, a jury found Petitioner guilty as charged. Petitioner was sentenced to life imprisonment with a minimum mandatory sentence of twenty-five years.

Petitioner took a direct appeal from his conviction. He raised one claim on appeal: Did the trial Court err in allowing prejudicial testimony concerning the arrest of appellant's "girlfriend"? On March 1, 1985, the state appellate court affirmed his conviction. *Gordon v. State*, 467 So.2d 1004 (Fla. 2d DCA 1985).

Petitioner then filed a Rule 3.850 motion for post conviction relief, raising the following issues:

(1) Exclusion of Blacks from the Jury to My Prejudice. With no blacks on the jury, I was precluded from receiving a fair trial. This occurred with prosecution's knowledge. The circumstances of the case meant certain conviction and sentence. The allusion to me and my girlfriend made me to appear as a pimp. Miss Patterson being an alleged prostitute and pregnant prejudiced the jury. Jurors were further influenced by age of victim, my race, and intimidated witness by threatening to send him to the electric chair. There is evi-

dence in the record which shows promises or deals made with defendants.

(2) The state's key witness was incompetent to give evidence due to insanity/Defendant was not sentenced for robbery. Documented court records show that Witness Jackson was not competent to stand trial. He has a record of mental illness, was under the influence of drugs, did not have accurate memory, could not maintain consistent explanation of facts in the case. Witness Jackson had to repeatedly be requestioned on same issues and only was motivated to speak freely when the death penalty was mentioned or was reminded of God. Mr. Jackson is and has been insane for many years by his own admission.

(3) Ineffective assistance of counsel who was court appointed/appellate counsel was ineffective. Both court appointed trial counsel and appellate counsel were ineffective in not appealing all white jury, for not appealing George Jackson's state of mind, his use of drugs and the intimidation aspects used by the detectives on the case. Further, evidence was totally absent which showed Defendant actually took part in the crimes. The elements of the crimes were not satisfied by the needed proof. Both counsel knew or should have known that each criminal episode is to rest on its own facts and the facts were not sufficiently proven with evidence for conviction and sentence.

(4) Elements of crimes were not proved by evidence/jury instructions did not stipulate penalties for lesser included offenses. Reversible fundamental error occurred when each and every element of the offense were not satisfied by proof and evidence. The fact is, the jury instructions were incomplete in that the penalties for lesser included offenses were not included to my prejudice.

(5) Speedy trial had expired. Due to conflict of interest, Defendant suffered prejudice from not having motion for discharge filed. Defendant should not be prejudiced by conflict of interest which was no fault of his own.

On April 6, 1987, the state trial court denied the motion as time-barred.[1] On May 22, 1987, the state appellate court per curiam affirmed the denial of the Rule 3.850 motion. *Gordon v. State*, 508 So.2d 17 (Fla. 2d DCA 1987).

Petitioner then filed a petition for habeas corpus relief in the state appellate court. Petitioner alleged ineffective assistance of both trial and appellate counsel. Petitioner claimed that he was factually innocent because the evidence against him was not credible[2] and that trial counsel was ineffective for not calling "three eye witnesses who could not put Petitioner at the scene of the crime" because the witnesses saw only two black men, not three, as they drove by in their car. Response, Exhibit 009. Petitioner's application for habeas corpus relief was denied. *Gordon v. Singletary*, 630 So.2d 1109 (Fla. 2d DCA 1993). Response, Exhibit 010.

On May 18, 1993, Petitioner filed his first Petition for Writ of Habeas Corpus in this Court. Petitioner raised the same ground that he raised in his direct appeal: Did the trial Court err in allowing prejudicial testimony concerning the arrest of appellant's "girlfriend"? This Court dismissed the petition, without prejudice, on October 12, 1993.

Respondent has raised abuse of the writ as a defense to the present petition. However, because the Court dismissed the first petition without prejudice, the Court will not bar the present petition for abuse of the writ.

### THE PRESENT PETITION

Petitioner raises the following grounds for habeas relief in the present petition:

(1) Denial of Effective Assistance of Counsel. There were three eye witnesses to said crime, and attorney (Defense) refused to have those witnesses in court. They

---

1. The Legislature had adopted Fla.R.Crim.P. 3.850 which allowed any person whose Judgment and Sentence had become final prior to January 1, 1985, until January 1, 1987, to file a 3.850 Motion. In this case, Petitioner's Judgment and Sentence had become final on May 11, 1984, but Petitioner did not file a motion for post conviction relief until February 20, 1987.

2. Petitioner did not claim insufficiency of the evidence.

couldn't place defendant at scene of crime. There would have been a different outcome at trial, if those three witnesses had testified.

(2) My constitutional right's were violated. Fifth, Sixth, and Fourteenth Amendments, U.S. Constitution. Trial and Appellate counsel were ineffective, as trial counsel refused to have three eye witnesses to crime in court. None of those three witnesses could put Defendant at scene of crime, but did put two so called codefendants at scene of crime. Appellate counsel was ineffective, in that she would not bring this up on appeal, denying Defendant's right to fair trial.

*Ineffective Assistance of Trial Counsel*

■ Petitioner seeks habeas relief based upon trial counsel's failure to call three witnesses who he contends would have exonerated him. Petitioner raised this claim at the state court level in a petition for writ of habeas corpus. However, in the state court, allegations of ineffective assistance of trial counsel are not cognizable under a petition for writ of habeas corpus; instead, they are reviewable by motion for post conviction relief. *Marshall v. Dugger,* 526 So.2d 143, 145 (Fla. 2d DCA 1988).

■ Although Petitioner raised an ineffective assistance of trial counsel claim in his Rule 3.850 motion, he did not raise the issue he now raises in this Court: trial counsel's failure to call three witnesses. A federal habeas petitioner may not present instances of ineffective assistance that the state court has not evaluated previously. *Givens v. Green,* 12 F.3d 1041 (11th Cir.1994). Therefore, Petitioner's claim is procedurally barred in this court because the time for returning to state court to raise this issue in a Rule 3.850 motion has passed.

Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in

federal court absent a showing of cause for and actual prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Presnell [v. Kemp]* 835 F.2d 1567, 1580 (11th Cir.1988).

Federal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law. *Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). In addition, federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted, unless the petitioner is able to show both cause for the default and prejudice resulting therefrom. *Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989); *Engle v. Isaac,* 456 U.S. 107, 128–29, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982). *Tower v. Phillips,* 7 F.3d 206, 210, 212 (11th Cir.1993).

The Supreme Court has also recognized a narrow exception for "extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Tower,* 7 F.3d at 212 n. 10 (citing *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)).

Petitioner has not shown cause and prejudice nor actual innocence to overcome the procedural bar. Petitioner knew the names of the three witnesses in 1983. Yet he did not seek collateral relief until 1993, and then he improperly sought relief in a state petition for writ of habeas corpus. Petitioner could have timely filed a motion for post conviction relief on this issue in the state trial court. Petitioner has not established objective external factor that prevented his timely raising the collateral claim in state court.

Furthermore, Petitioner has not shown that he is actually innocent. At trial, George Jackson testified that Petitioner was the individual who instigated the robbery because he needed cash to get his girlfriend out of jail. R420–421 [3]. He also testified that Petitioner was the individual who told his accomplice

---

**3.** "R" refers to Respondents' Exhibit 001. Jackson's testimony encompassed pp. 417–481.

[Clarence Morris] to grab the elderly victim. R422. Jackson testified that the 85–year–old victim was pushed to the ground; that her head struck the cement; that she was dragged to a lot; and that Petitioner kicked her in the head. R422–424. He testified that Petitioner, along with Clarence Morris, directed George Jackson to take the victim's purse. R424. He further testified that the victim was abandoned and left lying on her back; that the proceeds of the robbery was $15.00 and that the proceeds were divided equally among the three with each receiving $5.00. R425–426.

Petitioner's only allegation to support his claim of innocence is that three witnesses would not have placed him at the scene of the crime. The testimony of the three witnesses on which Petitioner relies was before the jury. Police Officer Jeff D. Winland testified when questioned by Assistant State Attorney Hellickson:

Q. What happened during the course of your conducting the investigation as far as being told of anything else happening?

A. I was approached by three gentlemen in a vehicle who had stopped at the curb, and they advised me that there was an elderly white female laying in the parking lot of the old Webb City Nursery.

Q. These individuals were three black males?

A. That's correct, yes.

Q. Based upon that, what did you do?

A. I left the accident scene and proceeded over to the parking lot. And at that point I found the victim laying on the pavement.

Q. Do you remember the names of the three individuals that approached you, without consulting your report?

A. No.

Q. They were not Morris, Gordon, and Jackson?

A. No.

Q. What did you find upon arriving at the scene?

A. I found that the victim was laying on her back on the western side of the parking lot, and at that time I called Fire Rescue to respond.

Q. What was your reason for calling Fire Rescue?

A. The three black gentlemen who stopped me told me that there were two other black males seen around her. One was holding her, and the other one seemed to have her purse in his hand. I felt that she might be injured because she was in kind of a dazed condition when I arrived.

Q. What did you do next?

A. After I called Fire Rescue?

Q. Yes.

A. We tried to determine who she was, where she might live, and I questioned her as to had she been assaulted, or any of the other things related to that. And she was negative. She said no, that she had not been. I asked did she have a purse, and she said no, and she was again in a dazed condition. I would say shocked, and I believe she wanted to sit up, and the paramedics were attending to her at that time.

Q. What did you do next?

A. After I determined that the paramedics were able to talk to her a little bit better than myself, I searched in the area, the immediate area, for a purse that she might have had.

I myself did not find it. However, it was found at a later time.

Q. What was your purpose in searching for a purse?

A. Based on the fact that the three gentlemen that had flagged me told me that they had seen the other two individuals, and one did have a purse in his hand.

R307–312.

And on cross-examination, the Officer testified:

Q. Officer, what time were you first contacted by these three black males?

A. Approximately 3:30 P.M.

Q. You indicated that they approached you and indicated that they had seen a lady down in this area that you have outlined; is that right?

A. They had seen two black males with the victim.

Q. I think you indicated that you remembered they came up and said, "There is a lady down here in the lot. You need to come."

A. They did say that. They then told me about the two males.

Q. You go to the scene. You seen the lady. She is in fact laying face up in the parking lot?

A. Yes, sir.

Q. Do you recall the names of the three black males?

A. Well, without referring back to the report, I don't know.

Q. Do you have it in your report?

A. I don't have the report with me, but it is in the report, yes.

Q. These individuals indicated to you, according to what you told Mr. Hellickson, that they had seen two black males doing something with this lady; correct?

A. Correct.

Q. They indicated that they had seen one person apparently grabbing her or holding her?

A. Correct.

Q. And that the other individuals was at that same time grabbing her purse?

A. As far as I can recall, that is what they told me.

Q. How was it that they were able to see that?

A. They explained to me that they were in their vehicle, and they were northbound on Eighth Street, and that they viewed this from their car as they were passing by.

Q. Apparently they would have come around the block and driven to where they saw you tending to the accident? Is that how they got up there?

A. I would assume so, yes.

Q. Did they ever indicate to you at any point that there were more than two black males involved with the lady you saw laying on the ground?

A. No.

R313–315.

Q. Did the individuals that said they had seen these two black males doing this to the lady, did they give you any further description other than they were black males?

A. That's about all they could give me from the distance that they were—nothing as to their size, height, or weight.

Q. A general description?

A. A general description, yes.

R317.

Later, a paramedic who had treated the victim was cross-examined:

Q. How fast were you able to respond when you were called by that police officer?

A. One minute.

Q. Do I assume correctly that you all had been over at the accident?

A. Yes. We were just up a block away.

Q. Did you notice any other type of marks indicating some type of physical abuse other than—did you notice lacerations on the back of her head?

A. No, sir.

Q. How long did you work with her at the scene?

A. We were there about five minutes.

Q. Then what happened?

A. I assisted transporting her to the hospital. Doug Lewis, the other guy that was with me, he went in the ambulance. I would then follow in the rescue truck.

Q. Look at that black man seated there at the table. Do you recall seeing him on April 26th?

A. No. It was two or three black men, but I couldn't identify him as being one of them.

Q. Did you ever see that man run from this area where this lady was?

A. No. There was nobody running from there.

R323–324.

Petitioner has offered no other evidence of his alleged innocence. The jury found Jackson's testimony credible even though they heard testimony that three witnesses saw only two black men at the scene. The record in this case does not provide additional support for Petitioner's actual innocence claim. This Court will not act as a fact-finder to overturn the findings of the jury when the same scenario is placed before this Court as to Jackson's testimony versus the witnesses' observation of two black men at the scene of the crime.

*Merits*

■■■ On the merits, Petitioner's claim of ineffective assistance of trial counsel does not warrant habeas relief. A person accused of a crime has the right to have "assistance of counsel" for his defense. U.S. Const.Amend. VI. The assistance of counsel protects the right to a fair trial. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner's claim of ineffective assistance of counsel has two components: first, a showing that counsel's performance was deficient and, second, a showing that counsel's errors were so serious as to deprive the defendant of a reliable result at trial. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984).

Petitioner has not shown that trial counsel's performance was deficient. Trial counsel cross-examined Jackson. Jackson was candid in disclosing his mental history. He testified that he was taking psychotropic medication. R429–430; 433–435. Trial counsel established that there was a separate, independent purse snatch in which Petitioner did not participate. R464. Trial counsel made certain that the jury was informed of Jackson's plea bargain and of his motivation for testifying. R465–477.

In addition, Petitioner has not shown that trial counsel's failure to call the three witnesses prejudiced Petitioner because the alleged testimony of the witnesses was before the jury. In addition, trial counsel argued this to the jury in his closing argument. R614.

Petitioner's ineffective assistance of trial counsel claim is procedurally barred and Petitioner has not shown cause and prejudice nor actual innocence to overcome the bar. Furthermore, Petitioner's claim of ineffective assistance of trial counsel is without merit. Therefore, Petitioner is not entitled to habeas relief based on ineffective assistance of trial counsel.

*Ineffective Assistance of Appellate Counsel*

■■■ In reviewing the ineffective assistance of appellate counsel claim, it is clear that "the standard of proof and standard of review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel." *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.), *cert. denied,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). Regardless of the procedural default barring the ineffective assistance of trial counsel claim, this Court must review whether appellate counsel was ineffective for failing to raise Petitioner's claim on appeal. The Eleventh Circuit has recognized that:

[a] defendant has a right to counsel to aid in the direct appeal of his or her criminal conviction. This right to counsel is violated when appellate counsel is ineffective. This circuit has applied the Supreme

Court's test for ineffective assistance at trial, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to guide its analysis of ineffective assistance of appellate counsel claims. Therefore, [Petitioner] must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense.

*Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir.1991).

 In reviewing whether appellate counsel's performance was deficient, this Court must ask whether it was reasonable under prevailing professional norms. Also, this Court should presume effectiveness. Finally, the "Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Id.* at 1130–31.

 Petitioner has not shown that appellate counsel was deficient for not raising the claim on direct appeal, or that not raising the claim on appeal prejudiced Petitioner. Appellate counsel could have reasonably assumed that any ineffective assistance of trial counsel claims would be brought in a Rule 3.850 motion for post conviction relief. Therefore, Petitioner is not entitled to habeas relief based on ineffective assistance of appellate counsel. Accordingly, it is ORDERED:

That Petitioner's Petition for Writ of Habeas Corpus is dismissed, with prejudice. The Clerk is directed to close this case.

DONE AND ORDERED.