**Gerald Eugene STANO,
Petitioner–Appellant,
Cross–Appellee,**

v.

**Richard L. DUGGER, Secretary, Florida
Department of Corrections,
Respondent–Appellee, Cross–Appellant.**

No. 88–3375.

United States Court of Appeals,
Eleventh Circuit.

Nov. 17, 1989.

As Amended Dec. 12, 1989.

Mark E. Olive, Georgia Resource Center, Inc., Atlanta, Ga., for petitioner-appellant, cross-appellee.

Margene A. Roper, Belle Turner, Asst. Attys. Gen., Daytona Beach, Fla., for respondent-appellee, cross-appellant.

Before TJOFLAT, Chief Judge, FAY and JOHNSON, Circuit Judges.

TJOFLAT, Chief Judge:

In this case, Gerald Eugene Stano appeals from the district court's denial of his petition for a writ of habeas corpus. Because we conclude that the State of Florida violated Stano's rights under the sixth and fourteenth amendments to the United States Constitution, we reverse the district court and direct that, on receipt of our mandate, the district court grant Stano's petition.

## I.

On August 15, 1982, Stano confessed to the murder of Susan Bickrest, whose body was discovered on December 19, 1975, floating in Spruce Creek in Volusia County, Florida. A forensic examination revealed that Bickrest had died the previous day from suffocation caused by strangulation and drowning. On October 8, 1982, two months after confessing to the Bickrest murder, Stano confessed to the murder of Mary Kathleen Muldoon, whose body was discovered in November 1977, lying face down in a drainage ditch in an isolated area of New Smyrna Beach, Florida. Forensic examination revealed that Muldoon died as the result of a gunshot wound to the head as well as drowning. On January 18, 1983, a Florida grand jury indicted Stano for the murders of Bickrest and Muldoon.

On March 11, 1983, the Volusia County Circuit Court held an arraignment, and Stano tendered a plea of guilty on each charge. Following an exchange between Stano's attorney, the trial judge, and Stano, the judge accepted Stano's guilty pleas. On June 13, 1983, the judge imposed the death penalty in both cases.

On appeal, the Supreme Court of Florida affirmed Stano's convictions and his death sentence. *See Stano v. State*, 460 So.2d 890 (Fla.1984), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985). The Governor of Florida subsequently signed a warrant for Stano's execution. Stano then petitioned the state courts for post-conviction relief, which the Supreme Court of Florida ultimately denied. *See Stano v. State*, 520 So.2d 278 (Fla.1988).

On April 27, 1988, the Governor of Florida again issued a warrant for Stano's execution. Stano proceeded to mount another attack against his convictions in the state courts, and on May 16, 1988, the Supreme Court of Florida denied him relief. *See Stano v. Dugger*, 524 So.2d 1018 (Fla.1988). On May 17, 1988, Stano petitioned the United States District Court for the Middle District of Florida for a writ of habeas corpus. After conducting an evidentiary hearing, the court on the same day denied Stano's petition. On May 18, 1988, this court granted Stano's petition for a certificate of probable cause and for a stay of execution. *See Stano v. Dugger*, 846 F.2d 1286 (11th Cir.1988). Stano now appeals from the district court's denial of habeas relief. We address Stano's claim that the trial court's acceptance of his guilty pleas denied him his right to assistance of counsel under the sixth and fourteenth amendments to the United States Constitution.[1]

---

**1.** Stano raises various other challenges on appeal, but our disposition of his sixth amendment claim makes unnecessary any consideration of these other claims.

## II.

The sixth amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.[2] The federal courts have long recognized this right to counsel as fundamental to our criminal justice system. As Justice Sutherland wrote in 1932 for the Court in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932):

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more is it true of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

*Id.* at 68–69, 53 S.Ct. at 64.

The importance of this right to counsel has led the courts to adopt special safeguards in order to prevent defendants from being deprived of its protection. For example, "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). Thus, a petitioner can obtain relief from ineffective assistance of counsel if petitioner was prejudiced by serious deficiencies in counsel's performance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "In some cases," moreover, the Supreme Court has held that "the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided." *United States v. Cronic*, 466 U.S. 648, 654 & n. 11, 104 S.Ct. 2039, 2044 & n. 11, 80 L.Ed.2d 657 (1984) (quoting *United States v. Decoster*, 624 F.2d 196, 219 (en banc) (MacKinnon, J., concurring), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979)); *see Penson v. Ohio*, ⎯ U.S. ⎯, ⎯, 109 S.Ct. 346, 353–54, 102 L.Ed.2d 300 (1988). Whereas the ineffective-assistance-of-counsel analysis under *Strickland* focuses on counsel's actual performance at trial, *Strickland*, 466 U.S. at 686–87, 104 S.Ct. at 2064, the analysis under *Cronic* looks to "the circumstances surrounding [counsel's] representation," *Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046.

As an additional safeguard, although courts have recognized a defendant's right to self-representation, before a trial court allows a defendant to invoke that right and relinquish the benefits of counsel, the court must ensure that the defendant does so "knowingly and intelligently," fully "aware of the dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).

The present case implicates both of these safeguards and can therefore be analyzed under either the ineffective-assistance-of-counsel rubric articulated in *Cronic* or under the waiver-of-counsel rubric articulated

**2.** The sixth amendment applies to the states through incorporation into the fourteenth amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). For convenience, we refer to the right to counsel in state courts as a sixth amendment right.

in *Faretta*. Under either analysis, however, the result is the same: in accepting Stano's guilty plea, the trial judge clearly denied Stano his sixth amendment right to assistance of counsel. We apply both analyses in turn.

### III.

 Crucial to our consideration of Stano's sixth amendment claim is the exchange that took place at the sentencing hearing between Stano's court-appointed lawyer, Mr. Pearl, the trial judge, and Stano himself. This exchange began with a statement by Mr. Pearl in which he told the court that he had not yet received discovery from the State and thus, not knowing what sort of evidence the State had, could not advise Stano on how to plead:

MR. PEARL: Before proceeding, Your Honor, as I have told Mr. Stano I would do, there are a couple of things I would like to inform the Court about in his presence that might appropriately be made a part of the plea dialogue.

At this time, Your Honor, I have not yet received full discovery from the state with respect to these cases and, therefore, *am not prepared to say that I know all of the substantive facts concerning these two killings.* The delay has been because much of the materials has not yet been received by the State and [the prosecutor] told me he would like to gather everything up at once and submit it to me rather than in installments. I agreed with that.

THE COURT: So, you're not complaining, you're just stating this for the record.

MR. PEARL: No, that is not a complaint. I'm just making my position clear in Mr. Stano's presence about the entry of his plea; that is to say, that *I am not fully prepared to advise him as to whether the State has sufficient evidence to convict him or not.* He is convinced that they do.

I have spoken with [the prosecutor]. I have confidence, certainly, in his integrity and honesty, and he assures me that the State can independently establish the corpus delicti in both of these cases. And Mr. Stano tells me that that is so.

Further, I have asked him about the admissions or confessions that he has made to Detective Paul Crow. And he assures me that those statements were made voluntarily, they were made competently, and intelligently after warning of his rights and that, therefore, there does not exist a good possibility that either of his admissions could be suppressed on a hearing.

He feels that *he wants to go forward and enter this plea* rather than go through a trial or even a delay at this time.

I have agreed that certainly *he has the right to do so,* but that he should know, and it should be on the record, that *I am not fully prepared at this time as his attorney to advise him* with respect to the advisability of a trial or not.

He tells me he does not want a trial.

THE COURT: Okay.

Mr. Stano, do you care to comment on what Mr. Pearl has just said?

THE DEFENDANT: No. I believe everything was quite sufficient that he said.

THE COURT: He stated things accurately?

THE DEFENDANT: Yes.

THE COURT: You're in agreement with what he said?

THE DEFENDANT: Yes, sir.

(Emphasis added.)

This exchange supports two different characterizations of the status of Stano's legal representation during the plea hearing: either (1) Stano in fact proceeded pro se or (2) Stano had a lawyer who, through no fault of his own, could provide no legal advice whatsoever. Under either characterization, the trial judge's acceptance of Stano's plea deprived Stano of his sixth amendment right to assistance of counsel. We discuss each possibility in turn.

### A.

The first possibility suggested by this colloquy is that Stano in fact represented

himself in pleading guilty at the hearing. We reach this conclusion by considering the effect of Mr. Pearl's statement to the court. Mr. Pearl described, in an entirely forthcoming manner, his inability to advise Stano on how to plead. Mr. Pearl was uncomfortable with his inability to advise Stano; therefore, at the end of his statement when he declared, "I am not fully prepared at this time as his attorney to advise him," Mr. Pearl might well have meant (and the court might well have understood him to mean) that he could not serve as Stano's attorney. In other words, Mr. Pearl might have been saying that he could not advise, i.e., represent, Stano as his attorney.

Of course, Mr. Pearl had already noted that Stano wanted to plead guilty and had also agreed "that certainly he has the right to do so." By this, Mr. Pearl might well have meant that Stano could plead as he wanted but would be proceeding on his own without an attorney's assistance. The effect of Mr. Pearl's statement, then, was to force Stano to represent himself at the plea hearing.

Stano, however, never actually requested to proceed pro se, nor does the record provide any indication that Stano understood he was proceeding in that capacity. The trial judge failed entirely to inform Stano that he was entitled to assistance of counsel or to ensure that Stano understood he was without counsel. The judge merely asked whether Stano cared to comment on Mr. Pearl's statement or agreed with that statement. The judge never asked, let alone ensured, whether Stano *understood* the significance of that statement—i.e., that if Stano chose to plead, he would be proceeding pro se.

■ Under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the judge's acceptance of Stano's plea under these circumstances denied Sta-

no his sixth amendment right to counsel. In *Faretta,* the Court recognized a criminal defendant's right to proceed pro se, but required trial courts to ensure that a defendant has waived his right to counsel "knowingly and intelligently." *Id.* at 835, 95 S.Ct. at 2541. As the *Faretta* Court explained, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* In order to ensure that a defendant is aware of the risks of self-representation, trial courts must apply a number of safeguards, preferably including a waiver hearing. *See Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1065 (11th Cir.1986). Two requirements are crucial before a court will allow a defendant to relinquish his right to counsel: (1) a defendant must clearly and unequivocally assert his right to self-representation; and (2) a court must make sure that a defendant understands the risks and disadvantages of self-representation. *Id.* at 1064–65 (citing *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541).

■ In this case, neither requirement was met before the court allowed Stano to relinquish the assistance of counsel. First, Stano never made any statement that even resembled an assertion of his right to self-representation, let alone an assertion that reached the level of clarity and unequivocalness required by *Faretta.* Second, the record provides no indication that Stano understood the risks and disadvantages of self-representation, and the court certainly took no steps to ensure that Stano had such an understanding. The record leaves no room for doubt that Stano failed to make the knowing and intelligent waiver required by *Faretta,* and by allowing him to relinquish the benefits of counsel under these circumstances, the trial court denied Stano his sixth amendment right to assistance of counsel.[3]

---

**3.** The dissent argues that Stano never intended to invoke his right to self-representation and therefore that no such right ever attached in this case. In the dissent's view, the trial court as a result had no reason "to conduct an inquiry to ensure that Stano realized the disadvantages of proceeding without counsel." The dissent's focus on Stano's intent, however, is misplaced. A court's obligation under *Faretta* does not depend upon whether a defendant intends to proceed pro se, but rather upon whether the defendant is *in fact* proceeding pro se. If the defendant is in

## B.

The second possibility suggested by the exchange at the plea hearing is that Stano neither invoked his right to self-representation nor waived his right to counsel and that Mr. Pearl continued as Stano's attorney throughout the hearing. According to this interpretation, when Mr. Pearl stated that he was "not fully prepared at this time as [Stano's] attorney to advise him," Mr. Pearl was not stating that he could not represent Stano. On the contrary, he was emphasizing his role as Stano's attorney and his responsibility as such to give his client advice. However, as a result of a delay, which was entirely beyond his control, Mr. Pearl had not received discovery from the State and therefore simply could not advise his client. Through no fault of Mr. Pearl's, then, the circumstances surrounding the State's release of discovery rendered him incapable of providing Stano with any meaningful legal assistance.

Under this characterization, the trial court's acceptance of Stano's plea remains just as erroneous, but under the ineffective-assistance-of-counsel doctrine articulated in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). As we recently explained in *Harding v. Davis,* 878 F.2d 1341, 1345 (11th Cir.1989), *Cronic* carves out an exception to the "general rule that a petitioner claiming ineffective assistance of counsel must demonstrate that he was prejudiced by errors in his counsel's performance." *See generally Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Whereas the *Strickland* test focuses on counsel's actual performance during the course of the representation, *id.* at 687, 104 S.Ct. at 2064, *Cronic* looks to "the circumstances surrounding the representation," *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046. If under those circumstances, "the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair," *id.* at 660–61, 104 S.Ct. at 2048, then ineffectiveness of counsel can be presumed "without inquiry into counsel's actual performance at trial," *id.* at 662, 104 S.Ct. at 2048.[4]

In the present case, the circumstances surrounding Mr. Pearl's representation of Stano—the State's failure to release discovery materials—"prevented [him] from assisting the accused during a critical stage of the proceeding." *See Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25. Under those circumstances, as the Court stated in *Cronic,* "although counsel [was] available to assist the accused ..., the likelihood that any lawyer, even a fully competent one [as Mr. Pearl was here], could provide effective assistance [was] so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659–60, 104 S.Ct. at 2047.

---

fact proceeding pro se, whether or not he has intended to invoke his right to self-representation, the court's obligation under *Faretta* applies. Indeed, a primary purpose of *Faretta's* "knowing and intelligent waiver" requirement is to ensure that a defendant both understands that he is proceeding pro se and intends to do so.

**4.** The dissent does not seem to grasp the distinction between *Strickland* and *Cronic.* In rejecting our application of *Cronic* to the present case, the dissent analyzes Mr. Pearl's specific actions and concludes that his representation was competent under the circumstances. In so doing, the dissent conducts a *Strickland* analysis under the guise of *Cronic.* Rather than an analysis of particular aspects of Mr. Pearl's performance, *Cronic* calls for an inquiry into "the circumstances surrounding the representation."

In *Cronic,* the defendant's attorney was appointed twenty-five days before defendant's trial on mail fraud charges involving numerous documents. The Court of Appeals reversed defendant's conviction, concluding that circumstances had hampered the attorney's preparation of the case and had thus deprived the defendant of effective assistance of counsel. The Supreme Court reversed the Court of Appeals, holding that the case was not one in which the surrounding circumstances made the effective assistance of counsel so unlikely as to warrant a presumption of prejudice. The Court cited *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), as a case in which the surrounding circumstances did warrant such a presumption. In *Powell,* the defense attorney was given a day to prepare for trial, which, as the Court in *Cronic* declared, "made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial." *Id.* 466 U.S. at 661, 104 S.Ct. at 2048.

Under *Cronic*, therefore, we must presume that Stano was prejudiced by Mr. Pearl's inability to give advice and grant him relief on grounds of ineffective assistance of counsel.

## IV.

Under either *Faretta* or *Cronic*, then, this court has no choice but to conclude that the trial judge committed error in accepting Stano's guilty plea—either without a more complete inquiry into Stano's understanding of his right to self-representation or in light of the circumstances that prevented Mr. Pearl from advising his client. We therefore reverse the district court and direct that, on receipt of our mandate, the district court grant Stano's petition for writ of habeas corpus.

IT IS SO ORDERED.

FAY, Circuit Judge, dissenting:

Bad cases can generate bad law. In this case, Stano's multiple confessions are disturbing for many reasons. For example, his relationship with one of the investigators and the alleged cooperation between defense counsel (not Pearl) and that detective cause serious concerns. The majority ruling, however, omits these issues. Without addressing Stano's other appellate claims, the majority has elected to base its opinion on two permutations of the usual capital habeas corpus appellate issue, Sixth Amendment assistance of counsel.

The majority grants relief on speculative, alternative grounds that have no support in the record and are contradictory: self-representation and ineffective assistance of counsel. The first basis for relief found by the majority is a *Faretta* violation. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *Faretta* holds that a defendant proceeding pro se must engage in the necessary colloquy with the court to show that his decision is made voluntarily and knowingly. That procedure has no application in this case.

Stano did not proceed pro se because Pearl was his court-appointed lawyer at his request. Pearl counseled his client concerning the plea proceeding and the consequences of a guilty plea. He stressed to Stano that he had been unable to investigate fully the alleged murders because the State had not produced all of its evidence to him. Therefore, Pearl advised Stano not to plead guilty.

Stano had pled guilty previously. In 1981, he had entered guilty pleas to three counts of first-degree murder before the same judge. The State had agreed to life sentences in those cases. After discussing all aspects of the subject plea with Pearl, Stano decided that he wanted to enter a plea of guilty. The majority now holds that a competent, knowledgeable defendant cannot choose to plead guilty.

The majority holding on the basis of *Faretta* is disconcerting in three respects: the manner in which the majority crafts its holding, its skewed interpretation and misapplication of *Faretta*, and the precedent established. Since Stano had court-appointed counsel and did not appear at the subject plea hearing pro se, the majority seems to find constructive notice and consequent loss of counsel in Pearl's statement to the court that *"I am not fully prepared at this time as his attorney to advise him* with respect to the advisability of a trial or not." Majority Opinion at 965 (emphasis by Majority). Referring to its *Faretta* analysis as the "first possibility" for its decision, the majority continues its speculative, hypothetical examination of the record as follows:

> Mr. Pearl *might* well have meant (and the court *might* well have understood him to mean) that he could not serve as Stano's attorney. In other words, Mr. Pearl *might* have been saying that he could not advise, i.e. represent, Stano as his attorney.

> Of course, Mr. Pearl had already noted that Stano wanted to plead guilty and had also agreed "that certainly he has the right to do so." By this, Mr. Pearl *might* well have meant that Stano could plead as he wanted but would be proceeding on his own without an attorney's assistance. The effect of Mr. Pearl's statement, then, was *to force Stano to represent himself at the plea hearing.*

Majority Opinion at page 966 (emphasis added). From this conjecture and postulated "effect," the majority declares that Stano was "force[d]" to represent himself at the plea hearing and commences its *Faretta* analysis. The majority subsequently concludes that the plea proceedings were deficient because Stano did not clearly and unequivocally assert his right of self-representation and that the court did not make certain that Stano understood the ramifications of self-representation. This determination is a non sequitur.

The majority acknowledges that "Stano never made any statement that even resembled an assertion of his right to self-representation, let alone an assertion that reached the level of clarity and unequivocalness required by *Faretta*." Majority Opinion at page 966. It is evident from the record that this was not his intention, which necessarily precedes action. In this case, subjective determination of intent is inappropriate; the requisite, objective action required in order to trigger *Faretta* would have been Stano's assertion of his right to self-representation.

After Pearl had disclosed completely his concerns regarding Stano's guilty plea before review of all the evidence from the State as well as his client's desire to plead guilty, the court questioned Stano as follows:

THE COURT: Mr. Stano, do you care to comment on what Mr. Pearl has just said?

THE DEFENDANT: No. I believe everything was quite sufficient that he said.

THE COURT: He stated things accurately?

THE DEFENDANT: Yes.

THE COURT: You're in agreement with what he said?

THE DEFENDANT: Yes, sir.

Stano clearly concurred in his counsel's representation of his election to plead guilty despite the lack of all evidence from the State. There is not even a faint suggestion of an assertion of self-representation by Stano. Instead, Stano's intention, evidenced by his action, was to plead

guilty. Based upon its own surmised reasoning, the majority has decided for Stano at this late date that he could have intended to assert his right of self-representation, or that he actually was proceeding pro se. If the trial court had discerned from any indication whatsoever that Stano was proceeding pro se, then it seems obvious that the *Faretta* inquiry would have been conducted given the court's concern with ascertaining the positions of Pearl and Stano regarding the plea. I do not believe that this court should formulate factual conclusions with legal implications based upon gross speculation.

Furthermore, the majority's application of *Faretta* is erroneous. While a defendant in a state criminal trial has a right under the Sixth and Fourteenth Amendments to proceed without counsel, this right does not attach until the defendant " 'knowingly and intelligently' " elects voluntarily to waive his constitutional right to assistance of counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *Orazio v. Dugger*, 876 F.2d 1508, 1512 (11th Cir.1989). The right to counsel is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does "not attach unless and until it [i]s *asserted*." *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir.1986) (emphasis in original), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987); *Brown v. Wainwright*, 665 F.2d 607, 610 (Former 5th Cir.1982) (en banc).

The Eleventh Circuit has clarified the actions required of a defendant in order to assert to the trial court that he desires to proceed pro se, which necessitates the requisite inquiry by the court:

To invoke his Sixth Amendment right under *Faretta* a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, petitioner must do no more than *state his request, either orally or in writing, unambig-*

*uously to the court so that no reasonable person can say that the request was not made.* In this Circuit, *the court must then conduct a hearing on the waiver of the right to counsel* to determine whether the accused understands the risks of proceeding pro se.

*Dorman,* 798 F.2d at 1366 (citation omitted) (emphasis added); *see Raulerson v. Wainwright,* 732 F.2d 803, 808 (11th Cir.), *cert. denied,* 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984). In *Faretta,* the defendant "clearly and unequivocally" declared to the trial judge weeks before trial that he wanted to represent himself without counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *see Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1064 (11th Cir.1986); *Raulerson,* 732 F.2d at 808. In response to this request, the judge conducted a *sua sponte* hearing to ascertain Faretta's ability to conduct his own defense. *Faretta,* 422 U.S. at 808, 95 S.Ct. at 2528. It is evident that the trial judge understood that Faretta desired to proceed pro se because of a specific request by Faretta made to him. *See, e.g., Orazio,* 876 F.2d at 1509, 1512 (Petitioner informed the trial judge that he wanted to represent himself at a hearing pursuant to his court-appointed counsel's request for withdrawal from representation.); *Fitzpatrick,* 800 F.2d at 1060–61, 1064–65 (Petitioner signed a waiver of his right to counsel before the court and reiterated verbally to the court that he understood that he was waiving his right to an attorney.); *Dorman,* 798 F.2d at 1360–62, 1366–67 (Petitioner filed motions pro se, informed the trial judge by letters of his desire to proceed pro se, and appealed to the state appellate court not only the trial judge's denial of his pro se motions, but also that judge's refusal to discharge the public defender and cited *Faretta.*); *United States v. Edwards,* 716 F.2d 822, 824 (11th Cir.1983) (per curiam) (Defendant filed a motion seeking pro se representation and withdrawal of his public defender; the public defender also filed a motion requesting that defendant be allowed to represent himself.); *see also Raulerson,* 732 F.2d at 809 (quoting *Brown,* 665 F.2d at 612) ("Although a defendant need not 'con-

tinually renew his request to represent himself even after it is conclusively denied by the trial judge,' he must pursue the matter diligently."). The *Faretta* case law does not provide for proceeding pro se without assertion of the right of self-representation.

In this case, Stano made no oral or written request asserting his desire to proceed pro se. Indeed, the majority concedes that Stano "never actually requested to proceed pro se, nor does the record provide any indication that Stano understood he was proceeding in that capacity." Majority Opinion at page 966. Even if this had been Stano's intention, the right of self-representation had to be articulated or manifested to the court by an oral or written request in order to be recognized. Neither the trial judge nor this court is called upon to be clairvoyant. The majority's ability to divine Stano's possible intention does not meet the standard of a reasonable person's understanding that a request for self-representation had been made. No one will be more astounded than Stano upon learning that he really did not want Pearl to represent him or that Pearl was not in fact his attorney.

Because Stano did not assert his right to proceed pro se, there was no need for the trial judge to conduct an inquiry to ensure that Stano realized the disadvantages of proceeding without counsel. The majority's analysis is defective because it should not have progressed to the second *Faretta* requirement, the court's failure to examine Stano as to the consequences of proceeding pro se, before being satisfied that the first requirement, Stano's assertion of his right of self-representation actually had occurred. The majority's faulting the trial court for not so inquiring of Stano is unsupported by *Faretta.* In my opinion, it would have been error for the trial court to engage in such an inquiry.

The majority decision, as it turns on *Faretta,* has created a treacherous slippery slope. The majority has announced that the choice by an informed, counseled defendant to plead guilty is equivalent to proceeding pro se whenever his counsel dis-

agrees with that decision. Thus, the *Faretta* doctrine has been expanded in application, and a trial court now must decipher when a defendant has been noticed constructively by his counsel that he is on his own or proceeding pro se. The majority has added yet another ground upon which to base an appeal and to mire further the already convoluted capital habeas corpus appellate process.

The "second possibility" relied upon by the majority for granting Stano relief is ineffective assistance of counsel pursuant to *Cronic*. *United States v. Cronic*, 466 U.S. 648, 665, 104 S.Ct. 2039, 2050, 80 L.Ed.2d 657 (1984). Under this alternative holding, Pearl remained as Stano's attorney in the subject plea hearing, but he was unable to advise Stano because he had not received some discovery from the State. This is an incorrect statement of the recorded facts. Pearl did advise Stano; he counseled Stano not to plead guilty.

In *Cronic*, the defendant in a complex criminal case claimed that he was prejudiced by representation by a young, court-appointed real estate attorney, who had never tried a jury case and who was allowed twenty-five days for pretrial preparation versus four and one-half years that the government had to investigate the case. Rejecting Cronic's contention that a presumption of prejudice resulted because of the lawyer's youth and inexperience, the Supreme Court stated that "[e]very experienced criminal defense attorney once tried his first criminal case." *Cronic*, 466 U.S. at 665, 104 S.Ct. at 2050. Since the Court determined that *Cronic*, a more egregious case factually than this case, was not a case "in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel," I am baffled as to the majority's basis for its decision on *Cronic*. 466 U.S. at 666, 104 S.Ct. at 2051. The majority apparently has adopted the reversed reasoning of the Tenth Circuit in *Cronic*. The suggested *Cronic* exceptions, based on prejudicial circumstances such as "complete denial of counsel," are not present in this case. 466 U.S. at 658–59 & n. 24, 104 S.Ct. at 2046–47 & n. 24.

Furthermore, the Eleventh Circuit has held that " '*Cronic* represents a narrow exception which the Supreme Court has carved out of the general rule that a petitioner claiming ineffective assistance of counsel must demonstrate that he was prejudiced by specific alleged errors in his counsel's performance. *Consequently, the burden of proof under Cronic is a very heavy one.*' " *Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir.1988) (per curiam) (emphasis in original) (quoting *Smith v. Wainwright*, 777 F.2d 609, 620 (11th Cir.1985), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986)), *cert. denied*, — U.S. ——, 109 S.Ct. 1354, 103 L.Ed.2d 821 (1989); *see also Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046 ("[B]ecause we presume that the lawyer is competent to provide the guiding hand that the defendant needs, the burden rests on the accused to demonstrate a constitutional violation." (citing *Michel v. Louisiana*, 350 U.S. 91, 100–01, 76 S.Ct. 158, 163–64, 100 L.Ed. 83 (1955))). In this case, the majority recognizes that a fully competent and experienced criminal lawyer, a public defender, was appointed to represent Stano. Moreover, the record shows that Pearl acted in every respect as competent counsel under the circumstances. Stano was arrested and charged. Pearl conferred with his client and attempted to obtain all available information. He advised Stano not to plead guilty because the State had not produced all of its evidence to him. Nevertheless, the majority labels his actions as actual or constructive denial of the assistance of counsel and bases its alternative holding on *Cronic*.

Although the majority's ineffective assistance of counsel analysis founded on *Cronic* is extremely strained, reliance on *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is completely unavailing, and understandably was not addressed. The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); *see Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir.1989). That fa-

miliar test requires that a convicted defendant complaining of ineffective assistance of counsel must show: 1) "that counsel's representation fell below an objective standard of reasonableness," and 2) "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068.

*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370; *see also Holmes,* 876 F.2d at 1551; *Slicker v. Wainwright,* 809 F.2d 768, 770 (11th Cir.1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the attorney as to the length of sentence would have changed the defendant's plea.). The majority does not acknowledge this Supreme Court and Eleventh Circuit authority. Properly, Pearl advised Stano not to plead guilty without review of all of the State's evidence against him. Not only did Pearl give Stano sound legal advice, but also Stano would have preserved his right to trial if he had followed Pearl's counsel.

*Hill* reiterated that "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill,* 474 U.S. at 56, 106 S.Ct. at 369 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). Pearl had counseled his client at every juncture, including this critical stage of pleading. His advice to Stano included not pleading guilty until all evidence from the State was available. There has been no issue in this case of Stano's incompetence. After receiving optimal legal advice, Stano knowingly and deliberately decided to plead guilty. The majority concludes that the accused should not have made this decision. While this may have been so, the choice was Stano's and not ours.

Stano was not acting without reasoned advice from experienced counsel; he simply refused to take it. While the majority emphasizes the inability of counsel to give Stano advice because Pearl did not have all of the State's evidence, I focus on Stano's decision and election to plead guilty. An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client of the merit of each. *Tafero v. Wainwright,* 796 F.2d 1314, 1320 (11th Cir.1986) (per curiam), *cert. denied,* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 782 (1987); *Thompson v. Wainwright,* 787 F.2d 1447, 1451 (11th Cir.1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). Pearl had informed Stano of all of the facts, including the absence of some State evidence, and he had advised his client not to plead guilty. There was nothing more that Pearl could have done. With this knowledge, Stano decided to plead guilty, despite his attorney's advice to the contrary. When a defendant preempts his attorney's strategy, he thereafter cannot claim ineffective assistance of counsel. *Mitchell v. Kemp,* 762 F.2d 886, 889 (11th Cir.1985), *cert. denied,* 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987); *Thompson,* 787 F.2d at 1452; *Foster v. Strickland,* 707 F.2d 1339, 1343–44 (11th Cir.1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984); *see Alvord v. Wainwright,* 725 F.2d 1282, 1289 (11th Cir.), *cert. denied,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). Pursuant to *Strickland* and the law of this circuit, I cannot find that Stano was denied effective assistance of counsel.

From the outset, the factual allegations in this case have troubled me greatly. The majority opinion exacerbates this concern because my research reveals no existing precedent on these facts for such an extension of *Faretta* based upon pure speculation, absolutely contrary to the record presented. For the reasons herein, I dissent.