Terry Brian TOWER, Petitioner–
Appellant,

v.

O.J. PHILLIPS, Respondent–Appellee.

No. 90–4038.

United States Court of Appeals,
Eleventh Circuit.

Nov. 17, 1993.

Terry Brian Tower (Towler), pro se.

Ronald W. Maxwell, Jacksonville, FL, for petitioner-appellant.

Edward C. Hill, Jr., Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for respondent-appellee.

Before ANDERSON, Circuit Judge, MORGAN and JOHNSON, Senior Circuit Judges.

PER CURIAM:

This case arises on appeal following the district court's order denying and dismissing the petition for writ of habeas corpus of petitioner-appellant Terry Brian Towler.[1] The original panel opinion was issued on December 21, 1992, and published at 979 F.2d 807. An active judge of this court withheld the mandate prompting reconsideration by the panel of the procedural bar issue raised in the appellee's brief. On May 3, 1993, appellant filed a motion to issue the mandate. That motion was denied on June 11, 1993. We now withdraw the opinion previously issued and published at 979 F.2d 807, and substitute the following judgment and opinion.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

In November 1981, Towler, then age 19, was in a Florida jail facing three informations containing various state felony charges against him. The informations charged Towler with at least three life felonies (including one count of attempted murder, one count of armed burglary, and one count of armed kidnapping), two armed robbery felonies which the State argues were also life felonies, but which Towler asserts constituted only first degree felonies,[2] and several second degree felonies (including two counts of escape, one count of introduction of contraband into prison, and one count of possession of contraband). The Florida trial court appointed an assistant public defender to represent Towler in connection with these charges.

On November 16, 1981, Towler entered into a written plea agreement with the State, pursuant to which Towler agreed to plead guilty to five of the offenses listed in the informations. Later the same day, Towler, accompanied by his attorney, appeared before the trial judge for a hearing to change

1. Although this case been docketed under the name "Tower," we will refer to the petitioner by his proper last name of "Towler."

2. Towler and the State have apparently disputed the status of the armed robbery charges from the initiation of the criminal proceedings against

Towler. The source of the dispute has centered on whether the underlying information's allegations that Towler committed robberies while carrying a knife were sufficient to charge Towler with robbery with a "deadly weapon." *See* Fla. Stat.Ann. § 812.13 (West Supp.1992).

Towler's plea on the five offenses from not guilty to guilty. During the hearing, the trial judge informed Towler of all of the charges against him and their maximum possible sentences, and engaged in a routine plea colloquy with Towler concerning those offenses to which Towler had agreed to plead guilty. With one exception,[3] Towler indicated that he understood both the charges and the effect of a guilty plea. At the conclusion of the hearing, the trial judge accepted and entered Towler's plea of guilty to one count of armed kidnapping, one count of armed robbery, one count of introduction of contraband into prison, and two counts of escape. In return, the state dropped the remaining charges against Towler.

The written plea agreement identified the offenses to which Towler agreed to plead guilty and referenced the location of each offense in the original informations. The plea agreement did not, however, indicate the degree of the offenses to which Towler would plead guilty. The trial judge entered Towler's guilty pleas to the charges in the same degree as listed in the informations—i.e., the judgment reflected convictions of two life felonies and three second degree felonies.[4] However, Towler alleges that he executed the plea agreement only upon the advice of his attorney that the charges against him would be reduced to lesser-degree offenses as a result of the plea agreement. Towler insists that had he known the true nature of the bargain, he would never have agreed to plead guilty to two life offenses which each carried mandatory sentences of thirty years to life in addition to three other second degree felonies.

Towler's attorney also represented Towler at his sentencing hearing, which was held on January 29, 1982. Shortly before the hear-

ing commenced, Towler obtained a copy of his Presentence Investigation Report. On reading of the possible sentencing options discussed in the report, Towler alleges that he realized for the first time that the charges he pleaded guilty to had not been reduced to third degree offenses. Towler claims that he spoke with his attorney about the perceived error immediately before the hearing. Towler insists that he told his attorney at that time that the report was not consistent with his understanding of the nature of his pleas, and that he therefore wished to withdraw his guilty pleas and proceed with a jury trial.

The same judge who had accepted Towler's guilty pleas presided over the sentencing hearing. At the hearing, Towler's attorney informed the judge that Towler wished to change his pleas. When the judge asked what grounds Towler had for withdrawing the guilty pleas, Towler's attorney responded, "[M]y understanding is that we would simply prefer to have a Jury Trial on each of these offenses." Towler's attorney did not mention anything improper about the plea agreement. Towler himself did not object to his attorney's characterization of his request, nor did the trial judge question Towler directly about his request to withdraw his pleas. The judge denied Towler's motion for permission to change his pleas, and sentenced Towler to a total of 95 years in prison. The subsequent procedural history is set out below.

### B. *Procedural History*

In February 1982, Towler's attorney filed a motion with the sentencing judge to reduce Towler's sentence, relying upon grounds wholly unrelated to Towler's federal claims. The sentencing judge denied the motion

---

**3.** In response to the court's question, "So far as we have gone, is that your understanding as far as this case is concerned," Towler told the judge that he understood the maximum sentence for armed robbery was 30 years. The judge had earlier listed the maximum sentence for armed robbery as life imprisonment. Although life imprisonment was the maximum sentence for armed robbery as a life felony, 30 years was the maximum sentence for armed robbery as a first degree felony.

**4.** Towler's guilty plea on the armed robbery charge was apparently entered as a life felony, although the court only imposed a 30–year sentence for the offense. Thirty years imprisonment is the minimum sentence for a life felony in Florida, and the maximum sentence for a first degree felony. *See* Fla.Stat.Ann. § 775.082(3) (West 1992). The armed robbery sentence appears to be the result of a compromise struck by the trial judge in response to the parties' dispute over the nature of the original armed robbery charges.

without opinion on March 26, 1982. Towler never appealed his convictions or sentence, allegedly because his attorney told him that he could not challenge his guilty pleas once his motion to reduce the sentence was denied.[5]

In June and November of 1987, more than five years after the entry of Towler's convictions, Towler filed two collateral motions in Florida state court to vacate or set aside his sentence pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. Neither of Towler's motions have ever been ruled upon by a Florida court. Although Towler has not sought mandamus or an expedited ruling on these motions, he has apparently written the clerk of the state court repeatedly concerning his pending motions.

On June 21, 1989, Towler initiated federal proceedings by filing a petition for writ of habeas corpus relief in the Middle District of Florida. *See* 28 U.S.C. § 2254 (West 1977). In his petition, Towler alleged the same three grounds for relief contained in his pending state motions: (1) the ineffective assistance of his appointed counsel; (2) the involuntariness of his guilty pleas;[6] and (3) the sentence imposed was in excess of the maximum sentence allowed by law.[7] On No-

vember 1, 1989, the State moved for summary judgment on Towler's petition. The district court referred the matter to a magistrate judge, who prepared a report recommending that Towler's petition be denied. The magistrate judge concluded that an evidentiary hearing was unnecessary because Towler's claims lacked merit on their face. On October 30, 1990, the district court adopted the magistrate's report and recommendation, and denied Towler's petition. Towler now brings a timely appeal of the district court's decision to deny his petition without an evidentiary hearing.

## II. ANALYSIS

On appeal, Towler challenges the district court's ruling that his habeas petition did not raise a question as to whether Towler was denied the effective assistance of counsel or whether Towler's guilty pleas may have been unknowing or involuntary. Before we can reach the merits of Towler's claims, however, we must address the State's argument that Towler's petition is procedurally barred because Towler has not shown cause for and prejudice from his failure to comply with Florida's time limitations on collateral motions made pursuant to Rule 3.850.[8] *See*

---

**5.** In support of this allegation, Towler submitted two letters addressed to him which appear to be signed by his attorney. The first letter, dated March 30, 1982, informs Towler, "[s]ince any request for a sentence reduction is addressed to the discretion of the Court, there is no right of appeal from an order denying such a motion. I regret the decision the Court made but there is nothing else that can be done." The second letter, dated June 3, 1982, informs Towler that no transcript of the court proceedings could be provided to Towler because "[t]ranscripts are generally only prepared when there is an appeal of some type. As I have explained to you in the past, Florida does not allow appeals from a guilty plea. Therefore, there are no transcripts." The letter concludes, "I regret the lengthy sentence given you by Judge Lawrence, and the decision not to reduce your sentence. But there is no further action that can be taken at this point."

**6.** Towler bases his involuntariness claims solely on the alleged misrepresentations of his attorney. Towler does not allege that the plea agreement should have been enforced according to his interpretation of its terms, or that the State was ever even aware of his interpretation of the agreement.

**7.** This claim was dismissed by the district court as purely an issue of state law. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988). Towler does not challenge the disposition of this claim on appeal.

**8.** Rule 3.850 provides in relevant part:

No ... motion [other than motions to vacate a sentence in excess of the legal limits] shall be filed or considered pursuant to this rule if filed more than two years after the judgment and sentence become final unless it alleges (1) the facts upon which the claim is predicated were unknown to the movant or his attorney and could not have been ascertained by the exercise of due diligence, or, (2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.

Fla.R.Crim.P. 3.850. Towler unquestionably failed to meet the two year deadline. Towler's petition, which alleges that he discovered the true nature of his guilty pleas shortly before his sentencing hearing, appears to disqualify him for the first exception to the time limit, and does not allege that the second exception is applicable to his claims.

*Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–09, 53 L.Ed.2d 594 (1977). Whether a petitioner's actions or inaction have created a state law procedural bar of particular claims is a mixed question of law and fact. Therefore, we review the district court's determination that Towler was not procedurally barred from raising his claims in federal court *de novo. Cf. Fox v. Kelso,* 911 F.2d 563, 568 (11th Cir.1990) (applying mixed question *de novo* standard of review to issues of exhaustion in state prisoner's habeas proceeding). The magistrate judge and district court below concluded that because the Florida courts never ruled on Towler's motions, a showing of cause and prejudice was unnecessary.[9] The State argues that this was error.

 Federal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law. *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). In addition, federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted, unless the petitioner is able to show both cause for the default and prejudice resulting therefrom.[10] *Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989); *Engle v. Isaac,* 456 U.S. 107, 128–29, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982). It is clear that if the state court in this case had held Towler's motion to be procedurally defaulted, we would enforce that bar in this court, as we have routinely done. *Atkins v. Singletary,* 965 F.2d 952 (11th Cir.1992); *Johnson v. Singletary,* 938 F.2d 1166, 1173–74 (11th Cir.1991), *cert. de-*

nied, —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992); *Whiddon v. Dugger,* 894 F.2d 1266 (11th Cir.), *cert. denied,* 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). It is also clear that had Towler never presented his claims to the Florida courts, we would apply state procedural default law ourselves and hold his claims to be barred. *See Parker v. Dugger,* 876 F.2d 1470 (11th Cir.1989), *rev'd on other grounds,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991); *Lindsey v. Smith,* 820 F.2d 1137, 1143 (11th Cir.1987), *cert. denied,* 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989). This case is complicated by the fact that Towler *did* present his claims in state court, but the state court never ruled one way or the other on the petitions.

The Florida court's inaction in this case is analogous to a summary denial, in which no explanation is given for a court's ruling. In such a case, it is impossible to know whether the state court relied upon a procedural bar, whether it considered and rejected a petition on the merits, or both. The Supreme Court has provided guidance to federal courts considering such ambiguous state court opinions. In *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Court extended the "plain statement" rule enunciated in *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983) to habeas corpus cases.[11] In *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Court clarified its holding in *Harris,* explaining that the "plain statement" rule applies only if the following test is satisfied:

> [I]f the decision of the last state court to which the petitioner presented his federal

---

9. The magistrate judge noted that the state court's failure to address Towler's motions had made it "impossible to tell whether the state court would have forgiven a procedural default by the petitioner."

10. The Supreme Court has also recognized a narrow exception for "extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). This exception is not at issue here.

11. In *Long,* the Court had held that if "it fairly appears that the state court rested its decision primarily on federal law," then the Supreme Court could reach the federal question on review unless the state court opinion contained "a clear and express statement that a decision rests on adequate and independent state grounds." *Id.* at 1042 and n. 7, 103 S.Ct. at 3477 and n. 7. Thus, in cases where a federal court could not discern whether a state court's decision rested on a state procedural bar or the merits of a federal claim, the court would assume that the federal issue was the basis for the state court's decision, and disregard an arguable procedural bar.

claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

*Id.* at ——, 111 S.Ct. at 2557. The Court reasoned that in cases where it did not "fairly appear that the state court rested its decision primarily on federal grounds," the presumption that the state court had not observed an applicable procedural bar was not the "most reasonable explanation" for its ruling. *Id.* at ——, 111 S.Ct. at 2558.

In *Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), the Supreme Court dealt with the problem of a state court's unexplained denial of a habeas petition. In that case, the petitioner's state habeas petition had been denied without opinion, so that the federal courts had no way of discerning the basis for the denial. However, the last state court to consider the petitioner's claim on direct appeal had expressly found it to be procedurally defaulted. The Court announced the following rule: where there had been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment would be presumed to rest upon the same ground. *Id.* at ——, 111 S.Ct. at 2594. The Court declined to apply the *Harris* presumption, finding it unreasonable to do so under such circumstances:

> As applied to an unexplained order leaving in effect a decision (or, in the case of habeas, the consequences of a decision) that expressly relies upon procedural bar, the *Harris* presumption would interpret the order as rejecting that bar and deciding the federal question on the merits. That is simply a most improbable assessment of what actually occurred. The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect—which simply "looks through" them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play.

*Id.* at ——, 111 S.Ct. at 2595. In this case, we are unable to follow *Ylst* precisely, because there was no direct appeal and there has been no state ruling at all upon Towler's federal claims; there is nothing *to* which we may "look through." However, *Ylst* is instructive in that it indicates that courts should not apply the *Harris* presumption in a vacuum.

■ As *Coleman v. Thompson* makes clear, the *Harris* presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar.

■ It is beyond dispute that Towler's Rule 3.850 motions were filed three years past the deadline for the filing of such motions, and are clearly procedurally barred. The only "cause" that Towler has offered to excuse his default are his allegations that his attorney informed him that he could not appeal, and that he did not learn about the availability of a Rule 3.850 motion until 1987. Neither of the reasons for Towler's delay can excuse his procedural default, however. It is well established that a petitioner has no right to counsel in post-conviction proceedings. *Coleman,* —— U.S. at ——, 111 S.Ct. at 2566. Thus, an attorney's failure to institute timely collateral proceedings cannot excuse a procedural default. It is also established that ignorance of available post-conviction remedies cannot excuse a procedural default. *McCoy v. Newsome,* 953 F.2d 1252 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992); *Whiddon v. Dugger,* 894 F.2d 1266, 1267 (11th Cir.), *cert. denied,* 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). We are thus required to enforce the state procedural bar in this case; Towler is entitled to no relief.

AFFIRMED.