**Charles Michael KIGHT, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Respondent–Appellee.**

No. 92–2935.

United States Court of Appeals, Eleventh Circuit.

March 15, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied June 6, 1995.

Jerrel E. Phillips, Martin J. McClain, Stephen M. Kissinger, Office of Capital Collater-

al Representative, Tallahassee, FL, for appellant.

Mark C. Menser, Gypsy Bailey, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, FL, for appellee.

Before KRAVITCH, ANDERSON and BLACK, Circuit Judges.

KRAVITCH, Circuit Judge:

Charles Michael Kight appeals from the district court's denial of his petition for a writ of habeas corpus. We hold that Kight is not entitled to relief as to his conviction or his sentence. Accordingly, we AFFIRM.

## I.

On December 7, 1982, Florida police arrested Charles Michael Kight and Gary Hutto in connection with the robbery of a black taxicab driver, Herman McGoogin. Kight and Hutto were apprehended separately, each near the scene of the robbery; McGoogin made on-sight identifications of the two men. Kight possessed a knife at the time of his arrest.

On December 14, 1982, the body of another black cab driver, Lawrence Butler, was discovered. Butler had been stabbed fifty-one times. On December 17, 1982, Detective Weeks removed Kight from his cell in order to retrieve the clothes that Kight had been wearing on the night he was arrested for the McGoogin robbery.[1] When Weeks and Kight reached the property room, Kight remarked, "I'm not afraid of the chair." Weeks asked

Kight, "what chair are you talking about," and Kight responded, "the electric chair . . . because Hutto cut [the cab driver's] throat, and he got his watch on." At this point, Weeks stopped Kight in order to read him his *Miranda* rights. After Kight orally waived his rights, Weeks contacted the detective in charge of the Butler murder investigation. Kight signed a written waiver of his constitutional rights to remain silent and to have an attorney present and gave a transcribed statement. Kight admitted being present during the murder, but told police that Hutto had committed the act and that he had known nothing about a plan to rob or murder prior to entering Butler's cab.

Kight was charged with first-degree murder.[2] During his trial, the prosecution presented the testimony of a forensic expert, who indicated that tests performed on the clothes that Kight was wearing on the night of his arrest contained blood stains consistent with Butler's blood. Additionally, McGoogin testified that when he was robbed by Kight and Hutto, it was Kight who had held the knife to his throat and used racial epithets. Further, four jailhouse inmates testified that Kight had told them that he had stabbed a cab driver and was going to "put the [murder charge] on" Hutto.[3]

At trial, Hutto testified that on the night of Butler's murder, he had passed out and woke up in a cab.[4] Kight was outside of the cab, stabbing the driver who was wearing only his underpants. Hutto further testified that during the McGoogin robbery he had tried to save McGoogin by pulling the knife which

---

1. The police wanted to test Kight's clothing to ascertain whether it contained blood consistent with Butler's blood.

2. The indictment charged Kight both with premeditated and felony murder.

3. Edward E. Hugo, Jr. testified that during the time that he and Kight shared a cell, Kight told him that he had "cut a taxicab driver's throat," and that he "wasn't going to catch a murder case, that there was somebody else with him . . . and he was going to put it on him [even though] the guy didn't kill the cab driver."

Fred Moody testified that Kight told him that he was "going to get off on insanity." Moody also testified that he overheard Kight recounting the details of the murder to another inmate.

Richard Lee Ellwood testified that Kight told him that he and Hutto had robbed a cab driver and that Kight had stabbed him and had slit his throat.

Charlie Sims testified that Kight told him that he was in jail on a murder case but was "going to tell the people that [Hutto] killed this cab driver" and that "he was going to play crazy."

4. Hutto had pleaded guilty to second degree murder in exchange for his testimony at Kight's trial.

Kight was holding away from McGoogin's throat.[5]

The defense argued that Kight was present for the murder but that Hutto had committed it. The jury was read Kight's confession, in which he admitted being present, but stated that Hutto had committed the crime, and that he had not known about the robbery or murder in advance. The defense introduced forensic evidence demonstrating that blood on Hutto's pants matched Butler's blood. Additionally, one witness testified that Hutto had told her that he had stabbed someone and taken a black jacket from the victim. A fellow inmate testified that Hutto had confessed to him that he had killed a cab driver and that Kight did not know anything about it.

The jury found Kight guilty. At the sentencing phase of his trial, Kight's attorney introduced mitigating evidence consisting of the testimony of Kight's mother and sister that Kight had a poor childhood, was physically abused by his father and stepfather, spent time in a foster home, could not read or write, and was in special education classes in school. Kight's sister testified that Kight had once apprehended a robber and received a medal for this deed. Additionally, Kight's school records, indicating that he had never completed the ninth grade, were introduced. Finally, the defense called Dr. Krop, a psychologist, who testified that Kight was mentally retarded and had an I.Q. of 69, which placed him in the lowest two percent of the population. Krop also testified that in his opinion, Kight "would be very passive, he would be very dependent, he would be very easily influenced, he could be very easily

manipulated." He further indicated that Kight had a drug and alcohol problem.

The jury was instructed on three aggravating circumstances:

(a) A capital felony was committed while the defendant was engaged or was an accomplice in the commission of or at [sic] attempt to commit, or flight after committing, or attempting to commit a robbery; (b) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; [and] (c) the capital felony was especially heinous, atrocious or cruel.

The jury was not given a narrowing instruction for the "heinous, atrocious or cruel" aggravating circumstance.

The jury was also instructed on four statutory mitigating circumstances[6] and was told to consider "any other aspect of the defendant's character or record or any other evidence of the offense" for mitigation purposes. A majority of the jury recommended that the court impose the death penalty upon Kight.[7]

The court found two aggravating circumstances: that the murder was committed during the commission of a robbery and that the offense was committed in a heinous, atrocious and cruel manner;[8] and found no statutory mitigating factors. The court found two nonstatutory mitigating factors: that Hutto received life imprisonment and that Kight had once "pursued and tackled a robber and held him until the police arrived." After weighing the mitigating and aggravating factors, the court concluded that the aggravating factors outweighed the mitigating factors and sentenced Kight to death.

---

**5.** McGoogin testified that while Kight had the knife to his throat, Hutto asked Kight, "what the hell [you] going to do," and had put his hand on Kight's hand, "pressing the knife around my throat."

**6.** The instructions recited the following mitigating circumstances:
(a) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; (b) the defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor; (c) the defendant acted under extreme duress or under the

substantial domination of another person; and (d) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law were substantially impaired.

**7.** Under Florida law, the jury issues an advisory sentence and the judge makes the final determination of life imprisonment or death.

**8.** The judge held that the state failed to prove beyond a reasonable doubt that the murder was committed to flee arrest.

Kight's conviction and sentence were affirmed on direct appeal. *See Kight v. State,* 512 So.2d 922 (Fla.1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988). Kight filed a Rule 3.850 motion for postconviction relief, which was denied following an evidentiary hearing on Kight's *Brady* claim. *See* Fla.R.Crim.P. 3.850. Kight appealed from this denial and, at the same time, filed a petition for a writ of habeas corpus with the Florida Supreme Court. That Court denied Kight's petition for a writ of habeas corpus and affirmed the trial court's denial of his Rule 3.850 motion. *See Kight v. Dugger,* 574 So.2d 1066 (Fla. 1990). Kight then filed a second petition for a writ of habeas corpus in the Florida Supreme Court, asserting that his death sentence was unconstitutional because the trial court did not give the jury a narrowing instruction for the "heinous, atrocious or cruel" aggravating circumstance. The Court summarily denied relief without issuing an opinion. *See Kight v. Singletary,* 618 So.2d 1368 (Fla.1993).

Kight filed a petition for a writ of habeas corpus in the Middle District of Florida pursuant to 28 U.S.C. § 2254, asserting eighteen claims.[9] The district court denied his petition without holding an evidentiary hearing; the court held some claims to be procedurally barred[10] and denied the remaining claims on the merits. On appeal, Kight abandons all but eight of his claims,[11] so we address only those claims that Kight has presented to this court.

---

**9.** Kight asserted that: (1 & 2) the trial court erroneously excluded material evidence, depriving him of a fair trial and his right to a defense; (3) the trial court erred in limiting his cross-examination of Hutto; (4) the public defender initially appointed to represent him had a conflict of interest; (5) his Fifth and Sixth Amendment rights to counsel were violated by the admission of statements that he made to police; (6) his counsel was ineffective at the guilt phase of the trial; (7) the prosecution withheld material, exculpatory evidence; (8) the court erred when, following the jury's return of a guilty verdict, it informed the jury that it could discuss its deliberations with anyone; (9 & 17) his counsel was ineffective at sentencing; (10) the court erred in refusing to instruct the jury that age was a statutory mitigating circumstance; (11) the judge improperly shifted the burden of proof to Kight to convince the jury that death was inappropriate;

## II.

Absent a showing of cause and prejudice, federal habeas courts may not reach the merits of *"procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims." *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (emphasis in original) (citing *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). We therefore do not discuss the merits of the following procedurally defaulted claims.

### A.

#### 1.

■ Kight argues that his death sentence is unconstitutional because the jury was not given a narrowing instruction for the "heinous, atrocious and cruel" aggravating circumstance. *See Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (death penalty was unconstitutionally imposed when Georgia Supreme Court adopted overly broad meaning of "outrageously or wantonly vile, horrible and inhuman" aggravating circumstance); *Espinosa v. Florida,* —— U.S. ——, —— – ——, 112 S.Ct. 2926, 2927–29, 120 L.Ed.2d 854 (1992) (narrowing instruction given to jury on "wicked, evil, atrocious or cruel" aggravating circumstance was unconstitutionally vague; because, under Florida law, judge and jury are co-sentencers, neither may consider unconstitutionally vague aggravating circumstance).

---

(12) the court erroneously instructed the jury on aggravating factors; (13) the prosecutor erroneously relied on impermissible "victim impact" statements; (14) the judge erred in failing to instruct the jury that it could consider mercy at sentencing; (15) the judge erred in not finding his mental retardation and childhood abuse as mitigating factors; (16) the prosecutor's closing argument violated his right to a reliable capital sentence; and (18) that all these errors combined to deprive him of a fair trial.

**10.** The district court held claims 3, 11, 12, and 14 to be procedurally barred.

**11.** *See Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1542 (11th Cir.1994) (issues not designated in brief are considered abandoned).

Kight, however, failed to object to the omission of the narrowing instruction at the sentencing phase of his trial [12] and under Florida law, a claim not objected to at trial is not preserved for appeal and cannot be raised in a postconviction proceeding. *See Marek v. Singletary,* 626 So.2d 160, 162 (Fla. 1993) (claim that unconstitutionally vague instruction for "heinous, atrocious, cruel" aggravating circumstance was given to jury barred because defendant did not object at trial), *cert. denied,* —— U.S. ——, 114 S.Ct. 1869, 128 L.Ed.2d 490 (1994). Additionally, because Kight did not raise this claim in his first petition for state habeas relief or his postconviction Rule 3.850 motion, the claim is procedurally barred. *See Mills v. Singletary,* 606 So.2d 622, 623 (Fla.1992) ("[h]abeas corpus cannot be used for obtaining additional appeals of issues which . . . could have [or] should have . . . been raised in prior postconviction filings") (quotations omitted). Kight's claim has therefore been procedurally defaulted in two separate ways.

### 2.

In an effort to convince this court to entertain this defaulted claim, Kight asserts that the procedural bar expired because the Florida Supreme Court's summary denial of his second habeas petition was on the merits. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) ("State procedural bars are not immortal . . . [and] may expire because of later actions by state courts"); *Alderman v. Zant,* 22 F.3d 1541, 1549 (11th Cir.) ("should a state court reach the merits of a claim notwithstanding a procedural default, the federal habeas court is not precluded from considering the merits of the claim"), *cert. denied,* —— U.S. ——, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). Because we conclude that the Florida Supreme Court's summary denial of relief cannot be said to rest on the merits of Kight's claim

rather than upon procedural default, we hold Kight's claim to be barred.

■ A federal habeas court will address a procedurally defaulted claim only if the "decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be intertwined with those claims, and did not clearly and expressly rely on an independent and adequate state ground," such as procedural default. *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991). We therefore must determine whether the Florida Supreme Court's summary dismissal of Kight's claim "fairly appear[s]" to rest on federal law.

In *Ylst,* the Court was required to determine whether unexplained decisions rested upon the merits or upon a procedural bar. *Ylst,* 501 U.S. at 802–03, 111 S.Ct. at 2594. The Court looked to a prior state opinion which held Ylst's claim to be procedurally barred and concluded that "respondent has [not] carried his burden of adducing strong evidence that one of the subsequent courts reached the merits of the federal claim." *Id.* at 806, 111 S.Ct. at 2596. Unlike *Ylst,* however, we have no prior state decision addressing Kight's claim that the failure to give a narrowing instruction to the jury was unconstitutional. For guidance, we therefore turn to this court's decision in *Tower v. Phillips,* 7 F.3d 206, 209 (11th Cir.1993).

In *Tower,* the petitioner filed two postconviction motions in Florida state court seeking to vacate or set aside his sentence on grounds which were procedurally barred. *Id.* at 209. The state court never ruled on his claims and petitioner filed a federal habeas petition asserting the same issues which were raised, but not decided, in the state court. We held petitioner's claims to be procedurally defaulted because "[a]s *Coleman v. Thompson* makes clear, the *Harris* [13]

---

12. After reviewing the record, we reject Kight's assertion that he preserved this issue by objecting at trial. Although Kight's attorney argued that the facts surrounding this crime were not heinous, he neither requested a narrowing instruction nor objected to the omission of such an instruction. *See Roberts v. Singletary,* 626 So.2d 168, 168 (Fla.1993) (at trial, defense counsel

objected only to applicability of heinous, atrocious or cruel aggravating circumstance and not to unconstitutionality or vagueness of instruction; claim is therefore procedurally barred).

13. In *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), the Supreme Court held that "a procedural default does

presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue.... [W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case." *Id.* at 211 (footnote added).

Similarly, in this case, although the state court summarily denied Kight's petition, there is nothing in its disposition of the case which "discuss[es] the federal grounds at issue." *Id.* We thus cannot assume that had the Florida Supreme Court explained its reasoning, it would have reached the merits of Kight's claim. Furthermore, Kight's claim was clearly procedurally barred in two different ways.[14] In light of the Supreme Court's mandate that a narrowing instruction be given when the state seeks the death penalty based upon the "heinous, atrocious or cruel" aggravating circumstance, had Kight preserved his claim for review, he would have had a strong case in the Florida Supreme Court.[15] Where, as here, a clearly meritorious claim is procedurally barred and the state court denies relief without opinion, "the most reasonable assumption is that ... the state court ... enforced the procedural bar." *Id.*

Because Kight has failed to show cause and prejudice sufficient to overcome the procedural bar, we do not reach the merits of this claim.[16]

## B.

The Florida Supreme Court specifically held Kight's assertions (1) that the felony-murder aggravating circumstance is unconstitutional and (2) that the trial judge erred in not instructing the jury that it could consider Kight's mental age as a statutory mitigating circumstance, to be procedurally barred. *See Kight,* 574 So.2d at 1072 (holding claims to be procedurally barred because they could have been raised on direct appeal but were not). We therefore cannot address these claims. *See Sawyer,* —— U.S. at ——, 112 S.Ct. at 2518.[17]

## III.

We now turn to the claims properly preserved for habeas review and, after carefully reviewing the record, hold each to be without merit.

## A.

■ Kight attempted to introduce evidence during the guilt phase of his trial that he lacked the mental capability to fabricate the story that he gave to the police. Outside the presence of the jury, the judge heard testimony from two defense witnesses: Dr.

---

not bar consideration of a federal claim ... [on] habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)).

14. His claim was barred because he failed to raise it in his first state habeas petition and Rule 3.850 motion and because he did not preserve the issue for appeal by objecting at trial.

15. Even if Kight did not prevail, at the very least, the Florida Supreme Court would have reweighed the aggravating and mitigating factors or would have undertaken a harmless error analysis. *See Parker v. Dugger,* 498 U.S. 308, 319, 111 S.Ct. 731, 738, 112 L.Ed.2d 812 (1991) ("In a weighing state, when a reviewing court strikes one or more of the aggravating factors on which the sentencer relies, the reviewing court may, consistent with the Constitution, reweigh the remaining evidence or conduct a harmless error analysis").

16. Kight's argument concerning cause and prejudice is limited to two paragraphs in his reply brief. He argues that his trial counsel's ineffectiveness was cause for the procedural bar and that "[i]f counsel's performance was deficient, Mr. Kight was prejudiced. Had the issue been raised, reversal would have been required."

The Florida Supreme Court, however, was not constitutionally required to reverse Kight's sentence; instead it could have reweighed the evidence or conducted a harmless error analysis. *See Parker v. Dugger,* 498 U.S. 308, 318–19, 111 S.Ct. 731, 738, 112 L.Ed.2d 812 (1991). Thus, prejudice cannot be presumed.

Further, Kight does not explain his failure to raise the claim in his first state habeas petition or in his Rule 3.850 motion—proceedings in which he was represented by counsel different from trial counsel.

17. Kight has failed to make the showing of cause and prejudice necessary to excuse his procedural default.

Krop, a psychologist, and Dr. Miller, a psychiatrist. Following this proffer, the judge ruled the evidence to be inadmissible. Kight asserts that the exclusion of this evidence violated his constitutional rights to a fair trial and to put forth a defense.

"We review state court evidentiary rulings on a petition for habeas corpus to determine only 'whether the error, if any, was of such a magnitude as to deny petitioner his right to a fair trial.'" *Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir.1992) (citations omitted). We conclude that the trial court did not err in excluding this evidence.

The state argued at trial that this evidence should be excluded because, under Florida law, evidence of an abnormal mental condition falling short of insanity is inadmissible to negate specific intent. *See Chestnut v. State*, 538 So.2d 820, 820 (Fla.1989). The trial court recognized the somewhat unique facts of this case,[18] and did not exclude the evidence simply because of Florida's refusal to admit diminished capacity evidence. Rather, the trial court excluded the evidence because it concluded that whether Kight could fabricate a story is a "hypothetical question" which would "not assist the jury" but rather "would confuse the jury and not shed any enlightenment for their evaluation of the credibility issue."

Given the confusing nature of the evidence and its limited probative value, we cannot say that the trial court erred in excluding this evidence.[19] Consequently, Kight was not deprived of his rights to a fair trial or to present a defense.

**18.** Traditionally, the diminished capacity defense is offered in order to negate a defendant's specific intent. The evidence in this case, however, was offered to show that Kight was incapable of concocting his story to the police, and thus that he was likely innocent of the crime.

This court has held Florida's rule rejecting the diminished capacity defense to negate a specific intent to commit the crime to be constitutional. *See Campbell v. Wainright*, 738 F.2d 1573, 1582 (11th Cir.1984), *cert. denied*, 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986). We need not decide whether the evidence excluded at Kight's trial falls within the rule found to be constitutional in *Campbell* because the trial judge did not exclude the evidence on this ground.

### B.

Kight also alleges that his trial counsel, Bill Sheppard, was ineffective at the guilt and sentencing phases of his trial. We find both contentions to be without merit.

In order to prevail on an ineffective assistance of counsel claim, Kight must show that his counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). We hold that Sheppard's performance at the guilt and sentencing phases of Kight's trial was not "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066.

Kight alleges that defense counsel should have pursued an insanity defense at the guilt phase and that his failure to do so rendered his performance constitutionally ineffective. In light of Kight's denial of complicity in the crime and his failure to come forward with evidence supporting a claim of insanity, we cannot say that his counsel was ineffective for failing to pursue an insanity defense. *See Presnell v. Zant*, 959 F.2d 1524, 1533 (11th Cir.1992) (rejecting defendant's ineffective assistance of counsel claim based upon attorney's failure to raise insanity defense because defendant failed to come forward with evidence supporting insanity defense); *Bundy v. Dugger*, 850 F.2d 1402, 1412 (11th Cir.1988) (failure to pursue insanity defense when defendant would not admit culpability in crime was not ineffective assistance of counsel), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 849, 102 L.Ed.2d 980 (1989).[20]

**19.** Further, Dr. Miller admitted in response to the court's question, that if Kight and another person planned a robbery, Kight "would be capable of initiating action on his own in that robbery."

Given this admission, we conclude that even if the trial court did err in excluding the evidence, that error was not of "such magnitude as to deny fundamental fairness to the criminal trial." *Alderman*, 22 F.3d at 1555 (citation omitted).

**20.** Nor was counsel ineffective, as Kight alleges, for failing to introduce evidence that Kight was intoxicated on the night of the crime. *See Nelson v. Nagle*, 995 F.2d 1549, 1554 (11th Cir.1993)

■ We also find no merit in Kight's allegation that Sheppard was ineffective because he did not adequately investigate or present mitigating evidence. Sheppard conducted a thorough investigation into mitigating evidence and hired two expert witnesses and a private investigator. Defense counsel also introduced Kight's school records and called both Kight's mother and sister to testify at sentencing. Given the amount of Sheppard's preparation and the thoroughness with which he presented the evidence, we conclude that Sheppard's performance was not deficient in any respect.[21]

### C.

■ Kight also asserts that the state's failure to disclose that it made concessions to the four jailhouse inmates in exchange for their testimony at trial violates *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and mandates habeas relief. We hold that the state court's factual finding that no deals were made by the government is entitled to a presumption of correctness, and thus deny relief.

■ The state court held an evidentiary hearing on this claim and issued a written order stating that after

> viewing each witness and their demeanor on the witness stand, their frankness and lack of frankness in answering the attorneys' questions, and the bias and prejudices brought out on some of the witnesses, ... [t]his court is satisfied beyond

any doubt that the jailed inmates ... were not given any inducements for their testimony prior to or after the trial of [Kight].

Written findings of fact by a state court following an evidentiary hearing are entitled to a statutory presumption of correctness unless a petitioner can establish that one of the statutory exceptions exists. *See* 28 U.S.C. § 2254(d). Kight asserts that the district court should not have presumed the state court's findings to be correct because the factual dispute concerning the *Brady* violation was not fully resolved by the state court and because the court's conclusions were not supported by the record.[22] We do not agree.

After reviewing the transcript of the evidentiary hearing, we cannot say that the court's findings were not supported by the record or that the state court failed to fully resolve Kight's constitutional claims.[23] Thus, the state court's finding that there were no undisclosed deals is entitled to a presumption of correctness and the district court correctly declined to hold an evidentiary hearing. *See McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir.1994) (en banc) ("In a federal habeas case, a written finding made by a state court of competent jurisdiction after a hearing on the merits of a factual issue in a proceeding to which the petitioner and the state were parties shall be presumed to be correct unless a statutory exception applies."), *cert. denied*, —— U.S. ——, 115 S.Ct. 489, 130 L.Ed.2d 401 (1994).

---

(failure to present evidence of defendant's intoxication was not ineffective; such evidence would contradict defense of factual innocence); *Harich v. Dugger*, 844 F.2d 1464, 1470–71 (11th Cir. 1988) (concluding that when strategy of the defense was to maintain factual innocence of Harich, counsel's decision to forgo an intoxication defense was reasonable), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989).

**21.** We also reject Kight's suggestion that the district court erred in not holding an evidentiary hearing to determine whether defense counsel was ineffective. A district court is not required to hold a hearing when "it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir.1991); *see Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir.1992) (petitioner's ineffective assis-

tance of counsel claim did not warrant evidentiary hearing); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (same), *cert. denied*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

**22.** § 2254(d) provides that a written finding is not presumed correct if "applicant shall establish," *inter alia*, "that the merits of the factual dispute were not resolved by the state court hearing" or that "such factual determination is not fairly supported by the record."

**23.** We also reject Kight's assertion that he was not afforded a full and fair state court hearing. *See* 28 U.S.C. § 2254(d)(6). The state court afforded Kight a lengthy evidentiary hearing on this claim during which Kight was represented by counsel.

## D.

■ Kight also argues that the statements which he gave detectives on December 17, 1982, were erroneously admitted at his trial in violation of his Fifth and Sixth Amendment rights to counsel. When Kight was taken to the property room, he told Detective Weeks that he was not afraid of the chair. In response, Weeks asked Kight "what chair are you talking about" and Kight began to describe Butler's murder. Kight was promptly read his rights and executed a waiver. He then gave another detective a formal statement. He asserts that these statements were taken in violation of his Fifth and Sixth Amendment rights to counsel and thus should have been suppressed at trial.[24] We disagree.

■ The Sixth Amendment guarantees an accused the right to counsel; this right, however, "does not attach until a prosecution is commenced." *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991). For purposes of the Sixth Amendment right to counsel, a prosecution commences "at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (citation omitted).

When Kight gave the statements to the police about the Butler murder, prosecution had not yet commenced against Kight with respect to this crime. Although prosecution had begun against him with respect to the McGoogin robbery, the "Sixth Amendment right [to counsel] ... is offense-specific." *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207.

■ In addition to a Sixth Amendment right to counsel, the Supreme Court held in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that "[a] suspect

subject to custodial interrogation has the right to an attorney and to have counsel present during questioning, and the police must explain this right to him before questioning begins." *Davis v. United States,* —— U.S. ——, ——, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994). The Fifth Amendment right to counsel is not offense-specific; the suspect must, however, invoke this right by unambiguously requesting counsel. *See id.* at ——, 114 S.Ct. at 2357.

Upon his arrest for the McGoogin robbery, Kight did not invoke his Fifth Amendment right to counsel.[25] Rather, Weeks testified that Kight stated that he "knew his rights and ... did not want to talk to me"; Kight never used the "word lawyer, attorney or mouthpiece." Thus, Kight's statements were properly admitted at trial.

## E.

■ Kight's final assertion that the trial judge erred in failing to find that his mental retardation and childhood abuse were mitigating factors is also without merit.

"Acceptance of nonstatutory mitigating factors is not constitutionally required; the Constitution only requires that the sentencer *consider* the factors." *Atkins v. Singletary,* 965 F.2d 952, 962 (11th Cir.1992) (emphasis in original). When defense counsel has been given an opportunity to present mitigating evidence but the sentencer declines to find mitigating factors, our review is "highly deferential." *Id.* Thus, the "[t]rial court's findings on mitigating factors are presumed to be correct ... and will be upheld if they are supported by the record." *Id.*

The defense presented its evidence at the sentencing phase of Kight's trial. In the written judgment and sentence, the court explained its reasons for rejecting each of the statutory mitigating factors. It is clear from

---

**24.** The trial court denied Kight's motion to suppress following an evidentiary hearing.

**25.** Because the record clearly indicates that Kight never invoked his right to counsel, we need not decide whether Detective Weeks's question "What chair are you talking about," in response to Kight's statement that he was "not afraid of the chair," was an interrogation sufficient to

trigger the *Miranda* protections. *See Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) ("the term 'interrogation' refers ... to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect").

this order that the court specifically considered evidence that Kight was "mentally retarded" and "was an underprivileged [and abused] child," but declined to find these factors to be mitigating.

After carefully reviewing the record, we cannot say, in light of the other evidence, that the judge erred in failing to find Kight's borderline mental retardation and abused childhood to be mitigating factors. *See id.* (no error when "trial judge fully considered all the supposedly mitigating factors offered by [defense] but, in light of the other evidence presented by the state, refused to accept most of these factors").

### IV.

For the forgoing reasons, we AFFIRM the district court's order denying Kight's petition for a writ of habeas corpus.